THE TRADERS NATIONAL BANK OF CHARLOTTE et als. v. THE LAWRENCE M'F'G CO. et als.  THE SAME PLAINTIFFS v. THE SAME DEFENDANTS—J. R. HALL'S APPEAL.  THE SAME PLAINTIFFS v. THE WOODLAWN M'F'G CO. et als.

*Reference— Usury—Bonds of Corporations—Registration— Mortgage—Materials—Liens.*

1. Where an appeal is taken to this Court from the action of a Judge in passing upon exceptions to the report of a referee, exceptions should be taken and stated in the record to the rulings of the Judge which it is sought to have reviewed, and the case ought not to be sent to this Court to be heard only on the exceptions taken to the ruling of the referee.

2. Where the charter of a corporation allowed it to borrow money on such terms as its directors might determine upon, and to issue bonds or other evidences of indebtedness; *It was held,* that this provision allowed it to sell its bonds below their face value, and where it did so, the loan was not for that reason usurious.

3. A provision in a charter allowing a corporation to *lend* money at a usurious rate of interest, does not confer the power on them to do so, but a provision to *borrow* money at such rate, is not liable to any objection.

4. Where one who knows of a prior unregistered deed of trust or mortgage, procures a mortgage for his own benefit on the same property, which is registered first, he gets the first lien on the property, unless he used fraud to prevent the registration of the mortgage which is first in date.

5. Where a bond secured by a mortgage is surrendered and a new bond taken in its place, the new bond will be secured by the mortgage, unless it appears that an extinguishment of the debt was intended.

6. Two corporations were under the same management, and one of them executed a mortgage on its property to secure a debt, and afterwards this debt was assumed by the other corporation, which executed a mortgage on its property to secure it, and the mortgage on the property of the original debtor corporation was cancelled. After the expiration of some time, the original debtor corporation again assumed the payment of this debt, executed a new mortgage to secure it, and the mortgage on the second corporation was cancelled; *It was held,* that under the provisions of our registration laws, as against creditors, the cancelled mortgages were inoperative, and the secured creditor could claim no liens or priorities under them.

7. As a general rule in the construction of statutes, a *proviso* will be considered as a limitation upon the general words preceding, and as excepting something therefrom, but this rule is not absolute, and the meaning of the *proviso* will be ascertained by the language used in it.

8. The provisions of Bat. Rev., ch. 25, §48, (*The Code,* §685,) apply to corporations generally, and are not restricted to those only, formed by foreclosures under a deed of trust of an insolvent or expiring corporation.

9. So, where a corporation made a mortgage for the purpose of securing bonds to raise money; *It was held,* that the debts owing by such corporation at the time the mortgage was executed, were entitled to priority over the bonds secured by the mortgage.

10. The act of 1879, which provides that mortgages executed by corporations on their property or earnings, shall not exempt the property or earnings from executions for the satisfaction of a judgment obtained for labor performed, materials furnished, or for torts committed by such corporation, so far as it relates to labor and materials furnished, is only intended to more effectually secure the lien given by the Constitution and statutes to laborers and material men, and was not intended to create a lien in favor of parties who furnish machinery, &c., to the corporation upon its personal credit.

(*Simonton* v. *Lanier,* 71 N. C., 498; *State* v. *Matthews,* 3 Jones, 451; *Hyman* v. *Devereux,* 63 N. C., 624; *Kidder* v. *McIlhenny,* 81 N. C., 123; *Flemming* v. *Burgin,* 2 Ired. Eq., 534; *Mason* v. *McCormick,* 75 N. C., 263; *Same Case,* 80 N. C., 244; *Lanier* v. *Bell,* 81 N. C., 337; cited and approved).

These were CIVIL ACTIONS, heard upon exceptions to the report of a referee by *Avery, Judge,* at Spring Term, 1886, of GASTON Superior Court.

The Lawrence Manufacturing Company, created by a special act of the General Assembly, private acts, 1879, ch. 63, a defendant with others in one action, and the Woodlawn Manufacturing Company, formed under the general law contained in Battle's Revisal, ch. 26, sued, with other defendants, in another action, which actions have been consolidated and prosecuted as one, became involved and embarrassed in the prosecution of their business operations, to procure relief from which, the latter company on November 16th, 1879, obtained from the defendant J. W. Fries a loan of $10,000, for which it gave its note, and to secure the same, executed a mortgage deed conveying its corporate property and franchises.

The two companies, located near each other in the county of Gaston, and engaged in the same general business of manufacturing, were under the management of the same officers and agencies, and most of the capital stock in each was held by the same owners.

In January, 1880, the indebtedness of the borrowing company was assumed by its associate, which substituted its own note therefor, and made to the creditor a similar mortgage of its own property to assure its payment. Thereupon the first note and mortgage were cancelled.

On March 30th, 1882, the debt was re-assumed by the Woodlawn Manufacturing Company, which, after making a payment of $2,500 on the debt, gave its note to said J. W. Fries for $7,500 and executed a second mortgage to secure the residue, upon its lands, mill, machinery and all waters and water privileges used in connection therewith; whereupon the note of the second mortgagor company was also surrendered, and its mortgage in like manner cancelled for its exoneration. This mortgage was proved the next day and admitted to registration in Gaston county on the 1st day of April, 1882.

Under a resolution of the directors and with the approval of the stockholders, on the day of registration of the last mortgage to Fries, the Lawrence Manufacturing Company executed a deed conveying all its land, mill and machinery thereon, rights, privileges and franchises, to the Fidelity Insurance Trust and Safe Deposit Company, a corporation formed under the laws of Pennsylvania, and located in the city of Philadelphia, in trust to secure forty-five coupon bonds, each of the denomination of $1,000, bearing interest at the rate of seven per cent. per annum, which the company caused to be issued and placed in the hands of the defendant Hall, he guaranteeing that they would bring upon a sale a sum not less than two thirds of their face value.

Unable to dispose of them in the market on these terms, Hall, in pursuance of his contract, took the bonds himself, and paid over to the company the stipulated sum of $30,-000, from which was deducted a sum charged by the agent for his services in obtaining the loan. On July 15th following, both corporations becoming utterly insolvent and incapable of carrying on their business, the Lawrence Manufacturing Company made an assignment of all its property, the land, mill and machinery thereon, with all its rights and privileges, to John M. Williamson, of Philadelphia, in trust to secure such of its notes, bills and other business paper on which there were endorsers or guarantors for its accommodation, as well as certain debts specifically mentioned; and secondly, to secure all other of its debts not mentioned.

On the same day, the Woodlawn Manufacturing Company made a similar assignment of its property to the same trustee, to secure such of its debts as had accommodation endorsers or guarantors, and the same creditors whose claims are preferred in the deed of the other corporation. These deeds were made by the same official agencies and in terms identical in declaring the trusts, *mutatis mutandis.*

The actions were instituted by unpreferred creditors against the separate companies, for an adjustment of their liabilities, and the appropriation of the property of each thereto, and, as they were under the same management, and their operations and interests intermixed, they have by consent been considered, prosecuted and defended as a single proceeding.

A reference was made to T. H. Cobb to ascertain the outstanding indebtedness of both companies, the resources applicable thereto, and the manner in which they should in law be appropriated to the defendant's debts. He made such inquiry, and reported the full and voluminous evidence of the demands against each; and his findings of fact and conclusions of law as to priorities in the distribution of the funds, to which exceptions were entered by the contestant parties, and from the rulings of the Judge thereon appeals are taken to this Court.

*Mr. W. P. Bynum*, for the plaintiffs.

*Messrs. J. C. Buxton* and *C. B. Watson*, for the defendant Fries.

*Mr. Jos. B. Batchelor*, (*Messrs. P. D. Walker, A. Burwell* and *Geo. F. Bason*, also filed a brief,) for the other defendants.

SMITH, C. J., (after stating the facts). It is to be observed, that no specific exception is taken to the rulings of the Court, as should have been done, limiting the examination to them, many of which objections to the referee's report, if this had been done, might not have been pressed in this Court, and so relieved it of unnecessary labor. The proper course is to state the exceptions to the rulings of the Court which the appellant wishes to be reviewed, after the rulings have been made, and to let them come up as part of the record, as contemplated in §418 of *The Code*. This would serve as a distinct and definite announcement to the oppo-

BANK *v.* THE M'F'G CO.

sing party of the matter relied on, lessen the labor of the
Court and counsel in hearing the appeal, and tend to a fair
trial of the cause.

While there are, as there should be, full records in each
appeal, it will be more convenient to consider, in proper
order, the exceptions of the appellants and dispose of them,
as they arise, in one opinion.

Preliminary to this, we advert to the fact that the said
Hall, originally a defendant, having by assignment become
the owner of many of the proved claims, and purchaser of
the corporate property of both companies at foreclosure sales,
has assumed the place of plaintiff, and filed an independent
complaint in the cause.   We proceed accordingly to an ex-
amination of the essential subject matter involved in the
exceptions.

The mortgage of April 1st, 1882: Objection is made to
the validity of the bonds secured in this deed for their full
amount, as a loan unwarranted by law as usurious and void,
for the excess above the sum borrowed.

The answer to this, is found in section 14 of the charter of
the Lawrence Manfacturing Company, which declares that
this corporation may borrow money on such terms as its
directors may determine upon, and they may issue bonds
or other evidences of indebtedness.

It is true that words, essentially similar, contained in the
charter of the Bank of Statesville, by which it was author-
ized "to lend money upon such terms and rates of interest
as may be agreed upon," were held to confer a power to be
exercised under the restraints of the general law, and not
independently of them.   *Simonton* v. *Lanier*, 71 N. C., 498.

A like limiting interpretation was given to general words
in the charter of the Bank of Fayetteville, authorizing it to
issue notes, and not defining their denomination, in *State* v.
*Matthews*, 3 Jones, 451.

But these cases differ from that before us, in that, here the enabling provision is for the benefit of the borrower, and that it may secure needed financial assistance in carrying on its business operations, while in the others the claim was not allowed to relieve those banking institutions from the restraints imposed by law upon all others, nor, in terms, does it undertake to do so, to the oppression of those who deal with them. *Morrison* v. *Eaton & Hamilton R. R. Co.,* 14 Indiana, 110.

The mortgages to Fries: In *Hyman* v. *Devereux*, 63 N. C., 624, a note secured by a mortgage and transferred to an assignee, was surrendered, and a new note, both under seal, executed to the assignee in its place, and it was insisted that the new security was no longer protected by the mortgage. But it was held, that this result did not necessarily follow the act of substitution, unless it was shown that an extinguishment of the debt was intended, and still less, in the words of RODMAN, J., "can it be presumed in the absence of proof that a creditor who takes a note in the place of a former one, intends to discharge the mortgage."

The same ruling was subsequently made in *Kidder* v. *McIlhenny*, 81 N. C., 123.

In the present case, while the identity of the indebtedness remained, as respects the creditor, it was changed into a new security, taken from one not bound by the former, and a mortgage given by the new debtor upon its own property, the former being given up and extinguished or cancelled. After an interval of more than a year, this arrangement was superseded by another, in which the borrowing company resumed its original liability, paid one fourth part of the debt, gave a new note for $7 500, (the residue,) and executed a second mortgage on its property, then owned, for its security, the second note and mortgage being at the same time cancelled. If there is any effect to be given to our registration law, the contention that the debt constitutes a lien

under the antecedent cancelled mortgages, cannot be sustained to the prejudice of intermediate debts.   A creditor examining the registry, would find that there was no mortgage on the property of the Woodlawn Manufacturing Company, after its cancellation or entry of satisfaction, when that of the other Company, with a new contract of indebtedness and a conveyance of its property to secure it, had taken the place of the first, and he might safely rely upon the exonerated and other means of the first mortgagor to meet a new contract with himself.

This is repugnant to the letter and policy of the law, which in express terms requires deeds in trust to be registered before they can have operation against creditors and purchasers for value, (*The Code* §1254,) and points out how, when so registered, they may be discharged, (§1271).   This evidence is furnished by an inspection of the registry, and is for the protection and safe dealing of others with the mortgagor or maker of the trust deed, and would be misleading and delusive, if satisfied and cancelled mortgages, so shown upon the registry, could be afterwards re-instated and given precedence over debts contracted after such examination.

So imperative is the requirement that such deeds, to be effective, must be registered, that one who knows of the execution of a prior deed of trust, and procures one upon the same property from the mortgagor, and causes it to be first registered, unless fraud was used to prevent the earlier registration of the first, acquires the preferable right, and equity will not interpose for his relief.   *Flemming* v. *Burgin*, 2 Ire. Eq., 584.

There is no error in the ruling as to this debt.

III. The debts contracted prior to April 1st, 1882:   These are given priority in the distribution of the assets of the Lawrence Manufacturing Company, by virtue of the *proviso* contained in §3 of chapter 131, Acts of 1872–'73, which is as follows : " That all debts and contracts of any

corporation, prior to or at the time of the execution of any mortgage or deed of trust by such corporation, shall have a first lien upon the property, rights and franchises of said corporation, and shall be paid off or secured before such mortgage or deed of trust shall be registered." *Battle's Revisal,* chap. 26, §48.

The proper interpretation of this *proviso* makes the controversy, the ruling in reference to which constitutes the alleged error presented in the exception.

On the one side it is argued, that the *proviso* is annexed to corporations authorized to be formed by purchasers under a deed of trust or mortgage made by an insolvent or expiring corporation, and does not extend to such a mortgage as the present, and this inference is drawn from the beginning words of section three, " when such corporation shall expire or be dissolved," meaning such purchasing corporation to be constituted under the act.

On the other hand it is insisted, that the clause says " that all debts and contracts of any corporation prior," &c., and not of such corporation, thus giving a wide and unrestricted operation to the *proviso.* This construction is sought to be fortified by the succeeding section, which declares the provisions of the act shall not apply to a corporation in which the State has an interest; for the State would have no interest in a corporation formed of purchasers, and there would be no necessity for this exemption, unless existing corporations were meant, in which are not to be included such as the State had an interest in. Moreover, it is required that existing debts shall be paid off or secured before the " mortgage or deed in trust shall be registered."

It is true these contrariant interpretations find, each, some support in the uncertain terms in which the legislative intent is expressed.

Some inference of an intent to extend the *proviso* to corporations generally, however they may have been brought

into existence, may be drawn from terms of the replacing enactment in *The Code*, §685, which extends to all corporations, and renders every conveyance of their property made absolutely, or upon condition, in trust, or by way of mortgage, " void and of no effect as to existing creditors, and as to claims for torts committed previously thereto, when oth- · erwise satisfaction could not be obtained." The claim must be enforced by action, however, within sixty days.

This section has no application to the present actions, which were begun in the Fall of 1882, before the statute went into effect, but it is some indication of the enlarged scope intended to be given to the *proviso* in the former enactment which, with some modification, is transferred to *The Code*.

Moreover, the primary purpose of the legislation is to impose restraints upon insolvent corporations, and disable them from borrowing money and conveying their property to secure it, whereby present liabilities might go unpaid.

Hence, satisfaction of, or security for, these is required, to give efficacy to the deed by putting it on the registry: and we can see no reason why a limited number of corporations, determined by their mode of origin, should be, and none other, embraced in the operation of the statute. If a construction extending it to existing liabilities be admitted, the effect would be to convert an intended preferential assignment into one for the common benefit of all creditors, or to render the assignment nugatory, unless the omitted liabilities should be first secured.

For these reasons we feel constrained to give the larger scope to the *proviso*, and put it in this respect in harmony with the present law.

While it is a general rule in the construction of statutes, to consider a *proviso* as a limitation upon the general words preceding. and excepting and taking out something therefrom, the rule is not absolute, and the meaning of the *pro-*

*viso* must generally be ascertained from the language used in it, and of this we have examples.

An instance of this is found in *Mason* v. *McCormick*, 75 N. C., 263, where a *proviso* to the act which allowed parties to testify, was held to impose a disability upon a witness who at the time was a surety to the prosecution bond, and even the removal of the interest would not restore his competency to give evidence. *Mason* v. *McCormick*, second appeal, 80 N. C., 244.

IV. The indebtedness incurred for labor done and materials furnished before April 1st, 1882:

These preferred claims are enumerated by the referee in paragraph 35 of his report, five in number, amounting in the aggregate to $15,112.77, due from the Lawrence Manufacturing Company; and those against the Woodlawn Manufacturing Company, four in number, are found in paragraph 36, amounting to $1,719.67.

These claims are allowed priority by virtue of the Act of 1879, which provides that mortgages of incorporated companies upon their property or earnings, whether in bonds or otherwise, hereafter issued, shall not have power to exempt the property or earnings of such incorporations from execution for the satisfaction of any judgment obtained in Courts of this State against such corporation for labor performed or material furnished such corporation, nor for torts committed by such corporation, its agents or employés, whereby any person is killed, or any person or property injured, any clause or clauses in such mortgage to the contrary notwithstanding. *The Code*, §1255.

The statute does not directly invalidate such mortgages, but, notwithstanding such attempted alienation, exposes the corporate property to execution issued upon a judgment recovered upon the causes of action mentioned. Literally and strictly, it does not apply to the present case, as there are no conflicting claims to title between the mortgagee and pur-

chaser at execution sale, or the privies of such, but the statute must be given a wider meaning, and if applicable, govern the disposition of funds under control of the Court.

There would seem to be no necessity for this enactment, which protects claims for labor done or material supplied, or for torts committed, in presence of that before referred to, which covers all demands for debts and torts, those enumerated in section 685, as well as others.

We are disposed to concur in the view of counsel for the appellant Hall, that the section, so far as it relates to claims for labor performed, or material furnished, pursuing very nearly the words used in §1781, was designed, by its disabling effect, to more effectually secure the liens given by the Constitution to the laborer, (Art. 10, §4,) and the statute extending the lien to materials furnished. But the lien is further extended to torts; and compensation is provided against any alienation attempted to defeat the claim.

But the statute does not, in our opinion, contemplate a lien security for machinery and other articles purchased abroad in putting up the mill, or facilitating its workings afterwards, when it is apparent, personal credit was alone looked to for payment, and a negotiable security taken. *Lanier* v. *Bell*, 81 N. C., 337.

The consequences would be pernicious and destructive of all fair and safe dealings with corporations, if a secret lien founded upon a sale by a distant creditor, of which a person had no information or means of information provided by law, could be set up as paramount to his demand, and unless imperatively demanded, such a construction ought not to be put upon an enactment as will lead to this result.

The referee finds that after paying the preferred debts, to-wit, those contracted previous to April 1st, 1882, and those for labor and material, the assets of the Lawrence Manufacturing Company will be absorbed in, and insufficient to pay the mortgage bonds; and that the assets of the Woodlawn

Manufacturing Company, applied to the lien debts as above, and then to the debt due J. W. Fries, will be consumed.

What effect the displacement from the list of preferred claims under the statute will have upon those next in order, under the respective assignments of July, 1882, by both companies, must be ascertained upon a re-reference of the account to be stated upon the basis of this opinion, and it is accordingly again referred to the same referee.

If in the confused and complicated case presented in the record, our general rulings upon the law do not cover all the exceptions, they may be again presented on the coming in of the report, in the same manner as they are now.

We repeat, there are no special exceptions to the rulings of the Judge except as they are involved in those taken to the report, and this is not sanctioned by the practice.

. This disposes of all the appeals.

Remanded.