POCAHONTAS COAL COMPANY v. HENDERSON ELECTRIC LIGHT & POWER COMPANY.

*Mortgage of Corporation Property—Priority of Debts for Labor and Materials.*

1. Debts of a corporation for labor performed or materials furnished to keep it "a going concern," have a priority over a mortgage previously recorded, although the labor done or materials furnished do not add to the plant or enhance its value (*Code*, Section 1255).

2. Coal furnished to and used by an electric light and power company to enable it to operate its plant is "material furnished" within the meaning of Section 1255 of *The Code*.

(AVERY, J., dissenting.)

CIVIL ACTION, tried before *McIver, J.*, at October Term, 1895, of VANCE Superior Court, on an appeal from the judgment of a justice of the peace.

The purpose of the action was to collect one hundred and thirty-one dollars and eighty-seven cents, with interest from December 1, 1894, of the defendant corporation, due for coal consumed in operating defendant's plant, and to establish the priority of said claim over certain pre-existing debts, secured by deeds of trust on the property of the defendant corporation, under Section 1255 of *The Code.*

A jury trial was waived, and the matter was submitted upon facts agreed, and his Honor gave judgment in favor of the plaintiff for the amount claimed, but held that the same had no priority over the anterior secured claims, from which last ruling the plaintiff appealed.

*Mr. W. B. Shaw*, for plaintiff (appellant).
*Mr. A. C. Zollicoffer*, for defendant.

FURCHES, J.: In 1892, the defendant, the Henderson Electric Light & Power Company, made a mortgage to Zollicoffer to secure a part of the purchase money of the concern. In 1893, it made another mortgage to Cooper to secure borrowed money. After the making of these mortgages the defendant company continued to operate the concern, which is a corporation, by and with the knowledge and consent of the mortgagees. That one Bridgers was in the management and control of the corporation, with full power and authority to purchase material, hire hands and operate the concern, which he did. And during this time and in December, 1894, the defendant through its agent Bridgers purchased coal of the plaintiff, which was used and consumed by defendant company. It is for the debt created by the purchase of this coal that

plaintiff brings this action. The liability of the defendant is not denied, but plaintiff claims that defendant's property is liable under execution for its debt, notwithstanding the mortgages. This the mortgagees deny (having made themselves parties), and this is the question presented for our determination.

Under the general law there can be no doubt that the position of the defendant mortgagees would be sustained. But the plaintiff puts its contention under Section 1255 of *The Code*, and it depends upon the construction given to this section, whether the property so mortgaged is still liable for the plaintiff's debt.

This section differs entirely from Section 1781, which creates or provides for creating a lien as a security for certain debts. It (Section 1255) creates no lien, but undertakes to afford the creditor protection, by disabling corporations from conveying their property, by mortgage, freed from liability upon a judgment obtained against such corporations " for labor performed, for material furnished, or *torts* committed by such corporations, their agents or employees." This statute must mean such labor performed, such material furnished and such *torts* committed after making the mortgage, as the act was passed in 1879. If it were for liabilities existing prior to making the mortgage, they would have been provided by Section 685, which was enacted in 1798, and there would have been no need for the enactment of Section 1255.

This construction seems to be so manifest from the provisions of Sections 685, 1255 and 1781, that we would not feel called upon to discuss them further, but for the construction put on Section 1255 in the case of *Paper Co.* v. *Publishing Co.*, 115 N. C., 147, and what is said by the Court in the discussion of *Bank* v. *Mfg. Co.*, 96 N. C., 298. In these cases Section 1255 was treated as a statu-

tory lien ; or at least it was discussed in connection with Section 1781 and interpreted in the light of the construction put on that section by the Court. If both statutes provided a statutory lien for the creditor, and Section 1781 had been construed, it is within the usual line of interpretation to reason by way of analogy from the construction given to Section 1781 in construing Section 1255. But if they are not both statutory lien laws, then this mode of reasoning and construction is erroneous and misleading. It is admitted that Section 1781 provides for a lien on the property, which like a mortgage follows it wherever it goes, if the act is complied with. And under this statute (1781) for " material furnished," it must be such material as enters into and becomes a part of the property, and adds to its value. But no such lien is provided for in Section 1255, and to show that none was intended, and in fact that none can exist, it is only necessary to reflect a moment and inquire what benefit there could be to the defendant's property by defendant's committing a *tort* on the plaintiff. And this is one of the claims that Section 1255 provides for. As we have said, this section neither creates nor provides for the creation of a lien. It does not seem to provide against prior judgment liens, whether taken upon a prior or a subsequent debt. Nor does it provide against an absolute *bona fide* sale, but only provides that the property mortgaged shall stand, so far as these debts and liabilities are concerned, just as if there had been no such mortgage made.

It is claimed that it would be a great hardship to hold that this property is liable to plaintiff's judgment, notwithstanding the defendant's mortgages were duly registered before the plaintiff's debt was made. But it does not appear so to us. This section was a part of the public laws of the State long before and at the date of these mort-

gages, and entered into and became a part of the contract and conditions of the mortgages. *McCless* v. *Meekins*, 117 N. C., 34.

Section 1255 was enacted after Sections 685 and 1781, and could not have been intended to give the same relief they gave. And it is equally certain it was passed for the benefit of the class of persons mentioned in the enactment. And it is the duty of the Court to take into consideration the object for which it was passed, and to construe it in that light. Potter's Dwarris on Statutes, p. 128.

The only remaining question to be considered is as to the " material furnished." This term too should be interpreted in the same spirit as that laid down above—by considering the evil to be remedied and the relief to be afforded. Potter, *supra*, p. 127, 132, 141; *Millard* v. *Lawrence*, 16 How. U. S., 251. The object seems to have been two-fold—one to enable such concerns to continue their operations, which they would probably not be able to do if it was known they had nothing out of which their employees and contractors could make their debts. But the other and probably the principal object moving to this enactment, was to give protection to this class of laborers and contractors, who had contributed their labor and material to keep the concern going. There is no contention that the terms of the Act do not include the fireman who shoveled the coal into the furnace. And, if it includes him, why should it not include the man who furnished the coal? One was as necessary to the operation of the concern as the other. And that was certainly one of the objects in view in passing the enactment. We must conclude that coal, which was necessary to run the concern, is embraced within the terms " material furnished." Potter, *supra*, p. 143; *Millard* v. *Lawrence*, *supra*; *Etheridge* v. *Palin*, 72 N. C., 213. Therefore, while we hold that plaintiff under Section 1255

had no lien on the plant of the defendant company for its debt, yet the mortgages mentioned are no bar to plaintiff's proceeding to enforce its judgment against the property by execution. There is error in that part of the judgment appealed from. The property mortgaged has been sold, but it is stated that the purchasers took with full notice of plaintiff's claim, and for convenience in the discussion we have used the term mortgagees.

                                                  Error.

AVERY, J., dissents.