C. H. BELVIN, Cashier of the National Bank of Raleigh, v. THE RALEIGH PAPER COMPANY, J. N. HOLDING, Lessee, W. W. VASS, et al.

(Decided November 20, 1898.)

*Mortgages—Lessee of Mortgaged Property—Improvements on same—Fixtures—Practice.*

1. A mortgagee is entitled to everything conveyed that belonged to the mortgagor at the time, and to any improvements placed upon the property since that time, that the mortgagor would be entitled to if the property had not been mortgaged; but the mortgagee is not entitled to improvements that the mortgagor would not have been entitled to, if the property had not been mortgaged.

2. The general rule is that whatever improvements a mortgagor puts

upon the land becomes additional security for the debt. This is, where the improvements—the fixtures—would belong to him.

3. Where a Lessee, or tenant for life or term of years puts such improvements upon the leased property, for the purposes of manufacturing or for trade, while there under the lease, the law does not impress upon such fixtures the character of land, and the tenant is the owner, and may remove them.

4. It may be expressly stipulated, as a part of the contract of lease, that such added fixtures are to belong to the lessee, with right to remove them. And when the nature of the estate proves that their erection was for a temporary purpose, and not for the purpose of making them a part of the freehold they do not become so in contemplation of law, and may be removed.

5. Where the lessee of a mortgagor owns the fixtures which, instead of removing, he sells to the mortgagor, they will enure to the benefit of the mortgagee; but if at the same time and as part of the same transaction the mortgagor conveyed them to a trustee to secure the purchase money agreed to be paid, then the mortgagee can derive no benefit from the transaction. And if the lessee in acquiring the added fixtures paid for them only in part, and gave a lien on them for the balance of the purchase money, then the mortgagor obtains the reversionary interest only and the lien must first be satisfied.

6. Section 1255 provides for the payment of debts incurred and torts committed by corporations and its agents while under mortgage. It has no applicability to liabilities of third parties operating on their own account.

7. A failure to object to an order of reference, at the time it is made, is a waiver of the right to a trial by jury. *Driller Co.* v. *Worth*, 117 N. C., 515.

CIVIL ACTION for foreclosure, receiver, and injunctive relief, heard before *Timberlake, J.*, at February Term, 1898, of WAKE Superior Court.

The action was converted into a Creditor's Bill and various persons holding claims against the defendant corporation made themselves parties plaintiffs and filed complaints in the cause, which was referred by order of Court to A. C. Zollicoffer, Esq., as Referee.

The Report and Exceptions thereto came on to be

heard before his Honor at this Term, and to his rulings and judgment, both sides excepted and appealed.

Both appeals were argued at the same time, and opinions in both filed by FURCHES, J. MONTGOMERY, J., dissenting from that part of the opinion which decides that the improvements put upon the land by the lessee of the mortgagor do not enure to the benefit of the plaintiff.

*Messrs. Shepherd & Busbee* and *J. B. Batchelor*, for Belvin, plaintiff (appellant).

*Mr. B. B. Winborne* for Raleigh Paper Co., defendant.

*Messrs. Douglas & Simms*, *E. C. Smith*, *Battle & Mordecai*, and *Jones & Tillett* and *R. O. Burton*, for various creditors.

FURCHES, J.: The plaintiff Belvin is the cashier of the National Bank of Raleigh, and the defendant, The Raleigh Paper Company, is a corporation. The defendant corporation on the 14th of January, 1890, executed a mortgage to the plaintiff Belvin, on its plant at the Great Falls of the Neuse, to secure some $13,000; and on the 5th of June, 1893, the defendant Paper Company executed a second mortgage to Belvin including the same property, and some other property not included in the first mortgage, but subject to the first mortgage, to secure an additional indebtedness of $9,000. The greater portion of this indebtedness still remains due and unpaid.

In April, 1893, the Paper Company leased this property to the defendant, J. N. Holding, and on the 9th of October, 1893, this lease was surrendered, and The Paper Company then leased said property to the defendant Holding and N. T. Cobb, for the term of six years, and in the month of March, 1894, Cobb sold and assigned all his interest in said lease and property to the de-

fendant Holding. By the terms of this lease said Holding and Cobb were to put certain improvements on said property; including an additional building, a one hundred horse power engine and other machinery to be used in manufacturing paper, this being the business in which said company was engaged. But by the terms of the lease, said improvements and machinery, so put on the corporation property by the lessees, were to be and remain their property, and they were to have the right to remove the same unless The Paper Company paid for said property and improvements.

Before the execution of the second mortgage to the plaintiff Belvin, the lessee Holding, had bought a 100 horse power engine of Ellington, Royster & Co., and this it seems was included in this second mortgage subject to the payment of the balance due thereon, which was stated to be $1500. It is stated that this indebtedness to Ellington, Royster & Co., was secured by mortgage (though this mortgage is not set out in the record as the other mortgages are), but no exception in the case seems to dispute this lien, except as to the amount which plaintiff says should only be $1500.

The defendant Holding, on the 16th of October, 1894, bought of M. P. Pegram other machinery amounting to $6,000 and gave Pegram a mortgage on said machinery to secure the notes given for said property, which was registered in Wake County on the 24th December, 1894; that after the registration of this mortgage, this machinery was put up upon the property so leased to the defendant Holding by the "Raleigh Paper Co." Besides the engine bought of Ellington, Royster & Co., and the machinery bought of Pegram, the defendant Holding erected on said property a large brick building adjoining, but not attached (as the referee finds) to the original

buildings on said property, when it was leased to Holding; that on the 2nd January, 1896, the defendant Holding sold to the Paper Company all the machinery and improvements he had put upon said property, during the term of said lease, for $18,500, to which sum there seems to be added $1500, amount still due on the engine, for which the Paper Co. executed to said Holding ten promissory notes for $2,000 each, amounting to $20,000 and, at the same time and as a part of the same transaction (as found by the referee), the Paper Co. executed to the defendant, W. W. Vass, a deed of trust on all this property (improvements and machinery) so conveyed to the Paper Co., to secure the payments of the ten notes given by said Paper Company for said improvements and machinery. These notes have not been paid, nor has a large part of the Pegram debt been paid. Besides these debts, there is a large amount of debts made by said Holding while operating this plant as lessee, a part of which is also claimed to be a lien on the original plant, or upon the property sold by Holding to the Paper Company. But we will first consider the rights of Belvin under these two mortgages, the rights of Pegram under his mortgage, and the rights of Vass under his mortgage or deed of trust.

It would seem that Belvin is entitled to everything conveyed, in either of his mortgages, that belonged to the Paper Company at the time said mortgages were made, and to any improvements placed upon said property, since that time, by the Paper Company or by any one else, that the Paper Company would be entitled to, if the property had not been mortgaged; but that he is not entitled to improvements put upon said property, that the Paper Company would not have been entitled to, if the property had not been mortgaged.

The general rule is that whatever improvements a mortgagor puts upon the mortgaged property enures to the benefit of the mortgagee, or, more correctly speaking, is additional security for the debt.    But this is upon the idea that the mortgagor is at least the equitable owner of the fee in the land; that he is entitled to the absolute legal as well as equitable title upon payment of the debt, and that such improvements are his and are made for his benefit, and that they increase the value of his property.    Under the law, when the mortgagor puts such improvements upon the land, they become a part of the land, and he cannot remove them, and thereby impair the security for the mortgaged debt, any more than he could dispose of a part of the land itself.    *Wharton* v. *Moore*, 84 N. C., 479; *Moore* v. *Valentine*, 77 N. C., 188; *Jones* v. *Hill*, 64 N. C., 198 ; *Foote* v. *Gooch*, 96 N. C., 265; *Horne* v. *Smith*, 105 N. C., 322.    This is where the improvements—the fixtures—would belong to the mortgagor.    The mortgagee is only entitled to this additional security, when the fixtures become a part of the soil, or a part of the land belonging to the mortgagor; and if it is not a part of the land of the mortgagor, and does not and never did belong to the mortgagor, it cannot belong to, or enure to the benefit of the mortgagee.

The law with regard to fixtures is very different under different relations and circumstances.    Thus we have seen that where a fee simple owner puts improvements, called fixtures, on his land, the law at once fixes them with the character of land.    But where a tenant for life, or lessee, or tenant for a term of years puts such improvements upon the leased property, for the purposes of manufacturing or for trade, while there under the lease, the law does not impress upon such

improvements (fixtures) the character of land, and the tenant putting them there is the owner of them, and may remove them from the land. They are considered and treated as personal property. *Railroad* v. *Deal*, 106 N. C., 112; *Overman* v. *Sasser,* 107 N. C., 432; *Woodworking Co.* v. *Southwick*, 119 N. C., 611. Therefore, as a matter of law, these improvements were never a part of the land—never belonged to the mortgagor, and cannot enure to the benefit of Belvin under his mortgage. But in this case, it is not necessary to rely upon this principle of law, so firmly established in our courts, as it is expressly stipulated, as a part of the contract of lease, that this property is to belong to the lessee and that he is to have the right to remove the same.

There were many cases cited to sustain the contention of Belvin and to show that he is entitled to the improvements (the fixtures) put on the property by Holding. But upon examination it is found that they do not conflict with the doctrines stated in this opinion. The cases most relied on for this contention were *Wharton* v. *Moore*, and *Moore* v. *Valentine, supra.* These cases are not in conflict with this opinion, but in fact sustain the views we have here expressed. In *Wharton* v. *Moore*, the improvements were made by a fee simple purchaser, and, when made, the law attached them to, and made them a part of the land. In *Moore* v. *Valentine*, the same principle obtains. The improvements (the fixtures) were placed on the land by a fee simple purchaser who sustained the relation of a mortgagor, and the law attached them to the land and made them in law "a part of the land." Indeed it is said in *Moore* v. *Valentine*, *supra:* "If he had taken a lease, say for five years, his right to remove the engines and appurtenances would

have been beyond any question.　In both of these cases, the nature of the estate proves that the erection of the fixtures was for a temporary purpose, and not for the purpose of making them a part of the freehold.　In such cases, the fixtures may be removed, and they do not in contemplation of law, become "a part of the land," and as the fixtures erected by the lessee Holding "did not become a part of the land" in contemplation of law, and as they were expressly made Holding's personal property by the terms of the contract—the lease—we see no ground upon which Belvin is entitled to them under his mortgage.　This must be so, unless he is entitled to them by reason of the conveyance, made by Holding to the Paper Company on the 2nd of January, 1896 ?　We have seen that these fixtures belonged to Holding, and, being his, he has the right to convey them; and having conveyed them to the Paper Company (the mortgagor) they would have become a part of the realty and enured to the benefit of the mortgagee Belvin, if it had not been that, at the same time and as a part of the same transaction, the Paper Company conveyed them to Vass, trustee, to secure the purchase money the Paper Company agreed to pay Holding for the property.　*Morgan* v. *Dickerson*, 85 N. C., 466 ; *Howell* v. *Howell*, 29 N. C., 491 ; *Bunting* v. *Jones*, 78 N. C., 289.

The conveyance of Holding to the Paper Co. and the assignment of the Paper Co. to Vass, trustee, being parts of the same transaction, the title never *"vested" in the Paper Company*, and the improvements did not become a part of the land mortgaged to Belvin, and he can derive no benefit from this transaction.

It now becomes necessary to ascertain the rights of

Vass under his assignment.    It has been seen that Holding was the owner of this property and had the right to convey the same (subject to other claims that will be discussed further on) and as it is not disputed but what Holding, through the Paper Company, conveyed whatever interest he had in said fixtures to Vass, trustee, it follows that Vass holds the same subject to the terms of said trust.    But to determine what his rights are, it is necessary to consider the rights of the other claimants.

It seems not to be disputed that Ellington, Royster & Co. are entitled to be paid the balance of their claim out of the sale of the 100 horse power engine, etc., sold to Holding by them.    But this property only can be applied to the payment of their claim.

The next claim to be considered is that of M. P. Pegram for what is known as the "Oats Machinery." This property was in Lincoln county when Holding bought it.    The sale was made, on time, at the price of $6,300, for which Holding executed his promissory notes and secured their payment by a mortgage on the property so bought by him.    This mortgage was registered in Wake County on the 24th of December, 1894, and before the property was moved to, and put up as a part of the machinery of the Paper Company.    Therefore, when Holding conveyed to the trustee Vass (through the Paper Company) on the 2nd day of January, 1896, he only had the reversion after paying the residue of the mortgage debt to Pegram.    Therefore, the Pegram mortgage debt must first be paid out of the property so mortgaged to Pegram.

This gives to Vass, trustee, all the fixtures put upon the lands of the "Raleigh Paper Mills Company" by Holding, under the lease, to be paid out *pro rata* upon the debts therein secured, but subject, first, to the payment of the debt of Ellington, Royster & Co. out of the

sale of the 100 horse power engine, etc., conveyed to Holding by them; and, secondly, to the payment of the balance of the debt due M. P. Pegram out of the sales of the property sold by the Bank of Charlotte to Holding, and by him mortgaged to said Pegram. The residue he will pay out upon the debts secured in the trust deed to him, as is above stated.

The next claim to be considered is that of Daniel M. Hicks. This claim can only be sustained against the mortgages of Belvin, if it can be sustained at all, under Section 1255 of *The Code*. *Coal Co.* v. *Electric Light Co.*, 118 N. C., 232; *Railroad* v. *Burnett*, at this term. This statute has been amended by the Act of 1897, but the amendment does not affect this case, as it was commenced before the passage of the statute. It appears from the findings of the referee that the material furnished by Hicks was necessary and was used in the manufacture of paper at the mills of the Raleigh Paper Company; that this company is the corporation that executed the two mortgages to Belvin. Thus far the claim seems to fall within the provisions of the statute as construed by this Court. But it is contended that the debt was not made by the corporation; that it is not the debt of the corporation and that the corporation is not liable for it; that Holding had no authority to make this debt for the corporation; that it was his debt, made for his benefit, and not for the corporation. And the referee found that Holding was not authorized to make this debt for the corporation, and that the corporation received no benefit from it. But it appears that Holding had been elected and was secretary and treasurer of the Raleigh Paper Mills Company, and that the company, by a vote of the directors on the 9th day of October, 1893, had authorized Holding to carry on the business in the name of the company. It appears that at

the time the drafts were given, upon which the judg-
ments were recovered, the attorney of Hicks knew that
Holding was carrying on the business of the concern
for himself, and not for the corporation. But it does
not appear that Hicks knew this when he sold him the
goods.

The statute provides for debts made by a corporation
or its agents. And it would seem that the authority
Holding had from the corporation, as its secretary and
treasurer, to conduct the business in the name of
the company, was *prima facie* sufficient evidence of
agency to authorize the plaintiff to sell to him as agent.
But the case does not stop here. Hicks brought suit
against the company. Holding, as secretary and treas-
urer of the corporation, accepted service and judgment
was rendered from which there was no appeal. Hold-
ing was secretary and treasurer of the corporation, and,
as such service of process might have been made on him.
And as service might have been made on him, he had
the right to accept service for the corporation. These
facts appearing, we are unable to see why Section 1255
of *The Code* does not apply, and thereby remove the
mortgage lien out of the way of the Hicks judgment,
where there was no appeal. This judgment does not
create a lien, but it puts the mortgages out of the way
of its enforcement, as the mortgages conveyed nothing
as against it. *Railroad* v. *Burnett, supra.* And as
the Court has taken charge of the property of the cor-
poration, and thereby prevented the plaintiff Hicks from
enforcing his judgments, these judgments must be sat-
isfied before there is any application of the assets to the
Belvin mortgages. The other judgments, appealed
from, were not allowed, and the judgment of the Court
below, on these judgments, is not appealed from. These

judgments, from which there was an appeal, do not fall under the ruling of the Court upon the final judgments.

This may seem to be hard measure as to the corporation, and as to Belvin. But they have no right to complain of Hicks. It may be the result of misplaced confidence, but if so, the corporation authorized it by making Holding its secretary and treasurer, and by authorizing him to carry on the business in the name of the corporation. And Belvin allowed it by sitting by and permitting the corporation to do this, instead of foreclosing his mortgages, as he might have done. By doing this, he took the chances and they have turned out to his disadvantage.

We are not disposed to interfere with the rulings of the Court as to the costs, except as expressly stated in these opinions. The judgment of the Court upon the appeal of the plaintiff Belvin will be modified in accordance with this opinion. And as it appears that Holding was to pay the balance due on the 100 horse power engine, estimated at the time by Holding to be $1500, this amount, or whatever turns out to be still due on said engine, should be deducted from whatever may be found to be due Holding from the trust fund under the Vass mortgage. That is, this amount should be charged against him in distributing the assets of the trust, if anything shall be found to be due him.

The case will be recommitted to the referee Zollicoffer to reform his report in accordance with this opinion and the opinion filed in this case in the appeal of the North Carolina Car Company, *infra.*

The plaintiff Belvin will pay the costs of this appeal out of the proceeds of sale under his mortgages and the Vass mortgage—each fund paying its *pro rata* proportion.

Modified and affirmed.

## APPEAL OF DEFENDANT—THE NORTH CAROLINA CAR COMPANY.

FURCHES, J.: In this appeal, the defendant, The North Carolina Car Company insists that it was entitled to have the issues, arising upon its exceptions, tried by a jury under Chapter 237 of the Acts, 1897. Upon examination of this statute, so far as it relates to the trial by jury, in cases of reference, it is almost identical with Section 421 of *The Code*, and must receive the same construction that has been given to that section. The order of reference is as follows:

"This action coming on to be heard at this April Term, 1897, of the Superior Court of Wake County, it is ordered that this action be referred to A. C. Zollicoffer, Esquire, to hear and determine all questions and issues of fact and law, and all pleas in bar arising in said action, and to state all necessary and proper accounts between parties. This order is made by the Court and not by consent."

It seems to us that this was a proper case for an order of reference. This the Car Company does not dispute, but, under the terms of the order and the Statute of 1897, it insists that it was entitled to have the issues arising upon its exceptions submitted to a jury for trial, without objecting to the order of reference. But if the Statute of 1897 is substantially the same as Section 421 of *The Code*, this contention has been decided against the defendant Car Company. *Driller Co.* v. *Worth*, 117 N. C., 515, where it is held that a "failure to object to an order of reference, at the time it is made, is a waiver of the right to a trial by jury." This case has been cited with approval in *Collins* v. *Young*, 118 N. C., 266: *State* v. *Mitchell*, 119 N. C., 784. Holding as we

do, that the Statute of 1897, in this respect, is the same as Section 421 of *The Code*, we find no error in the Court for overruling this motion.   This motion being properly refused, it was the duty of the Judge to pass upon and find the facts, which it did.   *Code*, Section 422.   And these findings of fact are as binding on us, as if they had been found by a jury.   We cannot review them. *Dunavant* v. *Railroad*, 122 N. C., 999; *Collins* v. *Young*, *supra; Cotton Mills* v. *Cotton Mills*, 115 N. C., 475.

This brings us to the question of lien, and, if a lien, to what extent, and upon what property?

These questions the learned counsel did not press in his argument before us.   And upon examining the findings of fact by the referee (and the findings of fact by the referee were expressly adopted by the Court as its findings,) we readily see why he did not.   The referee finds as facts that the defendant Car Company made the contract for this work, and for furnishing the material charged for in its complaint, with Holding as lessee of the Paper Company, and not as the agent of The Paper Company; that it knew, at the time it made the contract and at the time it did the work, that Holding was the lessee, and that he was having the work done for himself and for his own benefit, and not for the Paper Company.   This being so, the Car Company has no debt against The Paper Company; and there can be no lien, without a debt.   *Baker* v. *Robbins*, 119 N. C., 289; *Boone* v. *Chatfield*, 118 N. C., 916.   As the Car Company has no debt against the Paper Company and no lien on the property of the Paper Company, of course the plaintiff Belvin's mortgage cannot be affected by this claim.

According to the findings of the referee, the Car Company has a cause of action against the defendant

Holding.   But the action of the Car Company is not against him.

Under the findings of fact by the referee, the Car Company has no lien on the property of the Raleigh Paper Mills Company, under Section 1255 of *The Code*, nor under any other Statute.

There may be other claims against the Paper Company that were not specially called to our attention, and to which we have not given a separate treatment, as the record is very voluminous and they may have escaped our attention.   If there are such, they will be considered as falling under the principles we have laid down in discussing this claim of the Car Company, and will be governed by them.

The case will be recommitted to Mr. Zollicoffer to reform his report in accordance with this opinion and the opinion of the Court filed in the plaintiff's appeal; and when so reformed, it will be confirmed, and judgment rendered according to the reformed report.   The Car Company will pay the costs of this appeal.

Modified and affirmed.

MONTGOMERY, J., dissenting:   I cannot concur in that part of the opinion which decides that the improvements put upon the land by the lessee of the mortgagor do not enure to the benefit of the plaintiff, as an additional security to his mortgage debts.   I can state the reason for my dissent in a very few words.   The legal title to the land was in the plaintiff mortgagee when the lessee of the mortgagor made the improvements.   The mortgagor, The Paper Mills Company, made the lease to Holding, the plaintiff not having been a party thereto.   If the Paper Mills Co., the mortgagor, had made the improvements after the execution of the mortgage

certainly the improvements would have become an additional security for the plaintiff's debt. *Wharton* v. *Moore*, 84 N. C., at p. 483; *Moore* v. *Valentine*, 77 N. C., 188. How then can the lessee of the mortgagee stand in a different or better position than does his lessor the mortgagor? "If the mortgagor or any one standing in his place, enhance the value of the premises by improvements they become additional security for the debt and he can only claim the surplus, if any, upon such sale being made after satisfying the debt." 2 Washburn Real Property. In *Rice* v. *Dewey*, 54 Barb., 455, it was decided that "Where lands sold and conveyed by the mortgage are charged with the mortgage debt, improvements *that constitute a part of the realty*, irrespective of the question by whom made, are equally subject to the lien of the mortgagee as the land upon which they are made." And that case is cited as authority by this Court in Vol. 84 of our Reports at p. 484. The lessee's contract and the benefits reserved to himself under it should have been ratified at least by the plaintiff who held as we have said, the legal title to the land. That is not a hard rule. It, to my mind, was the most natural course that would have suggested itself to the lessee. The improvement erected by the lessee was a brick building 125 feet long by 32 feet wide with an extension 32x45 feet. The referee indeed, found that it could be removed without injury to the old building (upon one wall of which it partly rested) or to the freehold. But that finding is of no consequence as bearing upon the view I have taken of the matter.