CLARK, C. J., dissenting.
Action, heard on motion for judgment upon the pleadings. His Honor denied the motion, and plaintiff appealed. The facts alleged and admitted in the pleadings and exhibits are substantially as follows: The High Point Trunk and Bag Company, which we will hereafter designate as the "Trunk Company," was a manufacturing corporation, created under the laws of this State, and doing business at High Point, where it owned a factory site and buildings thereon, together with machinery and other property.
For the purposes of its business the Trunk Company decided to borrow $5,000, but its credit being insufficient to obtain the loan on its own note, the defendants, W. H. Ragan, J. H. Millis and H. A. Millis, being officers and directors of the company, signed its note as indorsers and sureties to the First National Bank of High Point on 22 October, 1902, and on the same day the Trunk Company executed, with the approval of its proper corporate authorities, a deed of trust to (458) J. A. Lindsay, as trustee, conveying its factory site and buildings thereon, to secure and save harmless the said indorsers and *Page 439 
sureties. The deed was properly executed and was duly and promptly recorded. The Trunk Company continued in possession of the property conveyed to Lindsay until 13 October, 1905. On that day the trustee Lindsay sold the property pursuant to the power of sale in the deed of trust and in compliance with the demand of the bank, payment of the note for $5,000 having been demanded of the Trunk Company and refused.
At the sale by the trustee, the defendants W. H. Ragan and J. H. Millis became the purchasers at the sum of $5,000, paid the purchase price to the trustee, who in turn paid it to the bank and received the canceled notes of the Trunk Company. Deed was made to the purchasers by the trustee and duly recorded.
On 21 September, 1904, one Causey Jarrett, a minor, in the service of the Trunk Company, received injuries resulting in the loss of an arm, and on 29 December, 1904, brought suit for the recovery of damages for such injury. This action pended until January Term, 1908, when final judgment upon the verdict was rendered for Jarrett and against the Trunk Company, for $2,730 and costs. The judgment was duly docketed.
On 11 January, 1907, two judgments were rendered and docketed against the Trunk Company, one in favor of R. R. King and A. B. Kimball, the other in favor of J. T. Morehead, both for fees as attorneys for services rendered the Trunk Company in the Jarrett suit. Executions were duly issued on these judgments and levy was made by the sheriff on the property conveyed in the deed to Lindsay, trustee, and by him sold and conveyed to Ragan and J. H. Millis, advertisement duly made, the property sold and R. R. King became the purchaser at the sum of $200, and on 19 August, 1907, the day of sale, deed was executed to King by the sheriff and duly and promptly recorded.
On 2 January, 1907, W. H. Ragan, J. H. Millis and H. A. Millis each instituted action in the Superior Court of Guilford County against the Trunk Company, to recover one-third, each, of $5,000 — the bank debt indorsed by them, for the payment of which the property had been sold by Lindsay, trustee, and alleged in each complaint the facts of the debt of the Trunk Company to the bank, their indorsement, the execution of the deed of trust to Lindsay, the sale by him as trustee, the purchase by W. H. Ragan and J. H. Millis, and the deed to them and its registration, and then alleged:
"7. That it has been suggested that the deed thus made to the (459) said Ragan and the said J. H. Millis is invalid and has not legal effect to pass the title to the said property, free and clear of all claims against the said defendant, and that they took nothing thereby. That the money paid over to Lindsay, trustee, was applied to the discharge *Page 440 
of said note or bond, on which the plaintiff was indorser, and thus this plaintiff has paid out for the use and benefit of the said defendant the sum of $1,666.66, and to that extent, by reason of his said suretyship and his undertaking to purchase this property, he is a creditor of the defendant in that amount, with interest thereon since 13 October, 1905".
The Trunk Company, in its answer, admitted the several allegations, except it questions the legal conclusion of the plaintiff as to the effect of the sale by Lindsay, trustee, stating as "its impression" that the deed by Lindsay, trustee, was good.
Judgment was entered, as prayed, for $1,666.66 in favor of each plaintiff, and duly docketed.
It further appears that on 4 August, 1909, execution was duly issued on the Jarrett judgment, and it was levied on the property conveyed in mortgage by the Trunk Company to Lindsay, trustee, and after due advertisement the sheriff of Guilford Country sold it at the courthouse door, when Clement, the plaintiff, became the purchaser at the price of $1,000, and the sheriff executed deed to him, which deed was duly recorded. The defendants, denying that plaintiff is the owner of and entitled to the possession of the land, but admitting the facts, further plead that on 11 March, 1908, the Trunk Company was duly adjudicated a bankrupt in the United States District Court, and as this adjudication as within four months from the date of the Jarrett judgment, it was thereby rendered invalid; and that Jarrett proved his claim in the court of bankruptcy. It is not alleged that the Trunk Company has received its discharge in bankruptcy.
The pleadings contain no suggestion affecting the bona fides
of the deed of trust of the Trunk Company to Lindsay, nor the sufficiency of the power of sale there in conferred, nor that the power was not executed in strict conformity with its terms, not that the deed to the purchasers was not properly executed and recorded. The deed of trust having been executed in good faith and for a sufficient consideration and duly registered prior to the docketing of the judgments in favor of King Kimball, J. T. Morehead, (460) W. H. Ragan, J. H. and H. A. Millis, recovered upon causes of action lying in contract, constituted a lien upon the property therein described and conveyed superior to the general lien of these judgments upon the mortgaged property of the judgment debtor. This is well settled in this State, and must logically and necessarily follow *Page 441 
from the statutory provisions which give to judgments a lien from their docketing, and mortgages and deeds of trust validity from their registration, as against creditors or purchasers for a valuable consideration. Rev., secs. 574, 982, and cases cited thereunder in Pell's Revisal, 1908; James v. Markham, 128 N.C. 380; Gammon v. Johnson,126 N.C. 66; Gambrill v. Wilcox, 111 N.C. 42; Gully v. Thurston,112 N.C. 192.
Default having been made by the Trunk Company in the payment of the note to the bank, the deed by the trustee executed to the purchasers at the sale made by him in conformity with the power of sale divested the equitable title of the Trunk Company in the mortgaged property, and left no estate nor interest in the corporation to which the lien of the subsequent judgments, in favor of King Kimball, Morehead, Ragan, J. H. and H. A. Millis, could attach; and this would be equally true as to the Jarrett judgment but for the provisions of section 1131, Rev., which we will presently consider.
When these judgments (except the Jarrett judgment) were docketed, the Trunk Company did not own the property previously sold by Lindsay; it had been divested of the entire legal and equitable estate. The deeds passing its entire legal and equitable estate had been properly executed, delivered and registered. There had been no reconveyance to it by the purchasers, and no act done sufficient in law to reinvest the title in the corporation. The sale and deed of the Sheriff of Guilford County, made pursuant to the execution issued on the King Kimball and Morehead judgment, were therefore, ineffectual to pass the title to the purchaser at that sale, and the deed conveyed no title nor interest in the property to the purchaser, King. The deed is a nullity.
The same conclusion would be reached as to the Jarrett judgment but for the provisions of section 1131, Rev., and the construction of that section by the decisions of this Court. Section 1131 is as follows: "Mortgages of corporations upon their property or earnings, whether in bonds or otherwise, shall not have power to exempt the property or earnings of such corporations from execution for the satisfaction of any judgment obtained in courts of the State against such corporations for labor performed nor torts committed by such corporation whereby any person is killed or any person or property injured, any (461) clause or clauses in such mortgage to the contrary notwithstanding." In Williams v. R. R., 126 N.C. 918, the Falls of Neuse Manufacturing Company petitioned the court to direct its receiver to pay out of the proceeds derived from a foreclosure sale of defendant's property the amount of a judgment recovered by it for damages occasioned by ponding back water on its lands, its judgment having been recovered after the foreclosure sale had been had and confirmed, and in disallowing *Page 442 
the motion the present Chief Justice, then Associate Justice, said: "This case is governed by R. R. v. Burnett, 123 N.C. 210. There Burnett brought an action against a corporation for personal injuries, recovered judgment and sued out execution. In the meantime a mortgage had been foreclosed against the corporation, the property had been sold and a new company was in possession as purchaser. This Court said: "The fact that the plaintiff claims under a decree of foreclosure by order of court does not affect the rights of the defendant Burnett. The decree was based on the mortgage and conveyed no more than was conveyed by the mortgage. It conveyed no more than would have been conveyed by a foreclosure of the mortgage under power of sale contained in the mortgage.' And says further: "The principle underlying this decision, and upon which it is decided, is that under section 1255 of The Code (now section 1131, Rev. 1905), the mortgage conveyed nothing as against this claim, and as it conveyed nothing as against this claim, the purchaser got nothing as against this claim by the mortgage sale,'" The Court further proceeds: "The purchaser stands in the shoes of the original debtor, bought only such interest as he could mortgage as against the Falls of Neuse Manufacturing Company, and subject to any judgment it might obtain, and the Falls of Neuse Manufacturing Company has no right to share in the proceeds of such sale. It must proceed against its debtor and assert its rights by execution against the property, notwithstanding the foreclosure sale, just as was held in R. R. v. Burnett, supra, The same doctrine was reiterated in Belvin v. Paper Co., 123 N.C. 138. . . . But here as inR. R. v. Burnett, the judgment was obtained after the sale under foreclosure, and after the property was turned over to the purchaser, and there was no obstruction of the petitioner's execution by any action of the court. As to it, the mortgage and any rights obtained under it,either by bondholders or purchasers, are nonexistent." In Howe v.Harper, 127 N.C. 356, the same conclusion was reached and the same construction affirmed in an opinion delivered by the same learned (462) judge. The proper construction and effect of this statute has become settled by these decisions, and applying this construction to the admitted facts of this case, we hold that the title obtained by Ragan and Millis under the deed from the trustee, Lindsay, was subject to the satisfaction of the judgment recovered by Jarrett for the tort of the corporation resulting in personal injuries to him; it was, however, valid and effectual against all subsequently recovered judgments except "for labor performed or torts committed by such corporation whereby," etc.
The defendants, however, plead as a defense that the trunk company was duly adjudicated a bankrupt within four months after the judgment *Page 443 
in favor of Jarrett was recovered, to wit, 11 March, 1908, and under the provisions of section 67f, Bankruptcy Act of 1898, "all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien shall be preserved for the benefit of the estate, and thereupon the same may pass to, and shall be preserved by, the trustee for the benefit of the estate, as aforesaid."
Before considering the construction placed upon this section by the Supreme Court of the United States and other courts, we must bear in mind that the property included in the mortgage and sold by the trustee was sold 13 October, 1905, and the adjudication in bankruptcy was made 11 March, 1908 — two and a half year intervening; the deed of trust under which the sale was made was executed 22 October, 1902 — six and one-half years before the adjudication. The property included in the deed could not have passed to the trustee in bankruptcy; as against him, the deed, made when it was, was an insuperable barrier. No other creditor except Jarrett, as appears from this record, could have reached that property, either through the trustee or otherwise. While the defendants plead that the Trunk Company was adjudicated a bankrupt, they do not plead its discharge in bankruptcy, nor does it appear that any discharge has been granted.
In Coal Co. v. Electric Light Co., 118 N.C. 232, in considering whether the effect of section 1131, Rev., was to create a lien, this Court said: "This section differs entirely from section 1781 (463) (Code, now sec. 2016, Rev.), which creates, or provides for creating, a lien as a security for certain debts. It (section 1255, Code, now sec. 1131, Rev.) creates no lien, but undertakes to afford the creditor protection by disabling corporations from conveying their property, by mortgage, freed from liability upon a judgment obtained against such corporations for labor performed, for materials furnished now omitted from section 1131], or torts committed by such corporations, their agents or employees.' This statute must mean such labor performed, such materials furnished and such torts committed after making the mortgage, as the act was passed in 1879 . . . [p. 235]. As we have said, this section neither creates nor provides for the creation of a lien. It does not seem to provide against prior judgment liens, whether taken upon a prior or subsequent debt; nor does it provide against an absolute *Page 444 bona fide sale, but only provides that the property mortgaged shall stand, so far as their debts and liabilities are concerned, just as if there had been no such mortgage made."
Neither the learned counsel, in their briefs or oral arguments, nor our own researches have found a similar statute in other States; but in Georgia they have an analogous provision which permits the maker of a note to waive as to its payment the benefit of the homestead provision of the Georgia Constitution. In McKenny v. Cheney, 118 Geo., 387, in determining the effect of section 67f, Bankruptcy Act, upon a note with a waiver clause in its, the Court held, quoting from Frazee v. Nelson, 179 Mass. 456: "The effect of section 67f of the United States Bankruptcy Act of 1898 is not to avoid the levies and liens therein referred to against all the world, but only as against the trustee in bankruptcy and those claiming under him, so that the property may pass to and be distributed among the creditors of the bankrupt." The Federal Court, as ruled in the Lockwood case (190 U.S. 294), having no jurisdiction to administer the property set apart as exempt, subsection 67f of the Bankruptcy Act does not affect a judgment obtained in a State court on a note waiving such exemption, when such judgment is proceeding only against property set a part as exempt." The Court further proceeds: "Aside from the authorities cited, however, we think that the language of the statute affords ample warrant for the ruling here made. The section in question provides simply that the effect of the discharge of such liens as are obtained in four months prior to the filing of the petition in bankruptcy shall be to pass the property against which the lien is held `to the trustee as a part of the estate of the bankrupt.'"
(464) In Lockwood v. Bank, 190 U.S. 292, the Supreme Court said: "The difference, however, between the two is, that in the latter case — that is, causing the exempt property to form a part of the bankruptcy assets — the inconvenience would be irremediable, since it would compel the administration of the exempt property as part of the estate in bankruptcy, whilst in the other, the rights of creditors having no lien, as in the case at bar, but having a remedy under the State law against the exempt property, may be protected by the court of bankruptcy, since, certainly, there would exist in favor of a creditor holding a waiver note, like that possessed by the petitioning creditor in the case at bar, an equity entitling him to a reasonable postponement of the discharge of the bankrupt, in order to allow the institution in the State court of such proceedings as might be necessary to make effective the rights possessed by the creditors." So in the present case, while section 1131, Rev., does not create a lien, it gives to the tort-claimant, who has reduced his claim to judgment, a right (remedy) to follow and *Page 445 
subject to the payment of his claim such property as the corporation has disposed of by mortgage, even where the sale under mortgage has taken place before judgment has been rendered. In concluding the opinion in Lockwood v.Bank, supra, Mr. Justice White says: "As in the case at bar the entire property which the bankrupt owned is within the exemption of the State law, it becomes unnecessary to consider what, if any, remedy might be available in the court of bankruptcy for the benefit of general creditors, in order to prevent the creditor holding the waiver as to exempt property from taking a dividend on his whole claim from the general assets, and thereafter availing himself of the right resulting from the waiver to proceed against exempt property."
What property, if any, the Trunk Company had at the time of the petition and adjudication in bankruptcy does not appear; the only property involved in this litigation is the property conveyed by it in the deed of trust or mortgage to Lindsay, which, by the prior registration of the deed, its bonafides being unquestioned, was placed beyond the reach of its general creditors, and which, by the provisions of section 1131, Rev., was not exempt from the satisfaction of the judgment recovered by the tort-claimant, Jarrett.
To hold that the Jarrett judgment, under section 1131, Rev., drew the mortgaged property into the bankruptcy court for the equal benefit of all the creditors of the Trunk Company, including the Jarrett judgment, would be to give an effect to the provisions of that section much broader than the construction of that section, as settled by the decisions of this Court, would warrant, and would go far beyond (465) its evident purpose. It would be to subject the mortgaged property of a corporation, though a foreclosure had been had more than two years before and adjudication in bankruptcy, to distribution among the general contract creditors, because there happened to exist a judgment for labor performed or a tort committed, resulting in death or personal injuries. We cannot accept this enlargement or broadening of the provisions of the statute. Its language does not admit of such interpretation, nor are we constrained to so interpret it by the provisions of any section of the bankruptcy act.
Accepting all the facts alleged in the complaint and admitted in the answer as true, and accepting as true all the defenses pleaded in the answer, except their legal effect, we conclude that the plaintiff was entitled to judgment, upon the pleadings, that he is the owner and entitled to the possession of the land described, with the buildings thereon, and the deeds to the defendants casting a cloud upon his title should be canceled of record, by placing upon the margin a memorandum of the judgment to be entered in accordance with this opinion. In refusing the motion of the plaintiff there was error.
Reversed. *Page 446