CLARK, C. J., and BROWN, J., dissenting.
This is an action to restrain the sale of certain municipal bonds, the plaintiff alleging that the act of the General Assembly authorizing the sale of the bonds is unconstitutional and void.
The important and material facts involved in this controversy are:
1. That the city of Goldsboro, being indebted for public improvements, prepared to issue bonds under the Municipal Finance Act for sale in order that the proceeds might be used to pay said indebtedness, which consists of $150,000 in favor of the Equitable Trust Company of New York, by notes dated 2 June, 1920, and due 2 December, 1920; $75,000 in favor of the Equitable Trust Company of New York, by notes dated 1 September, 1920, and due 1 February, 1921; $75,000 in favor of J. S. Bache Company of New York, by notes dated 14 September, 1920, and due 14 September, 1921; $41,661 in favor of Peoples Bank and Trust Company of Goldsboro, now due; $42,500 in favor of Wayne National Bank of Goldsboro, now due; $25,000 in favor of the West Construction Company, due within two months, all of which debts were contracted for the purpose of securing money with which to pay outstanding contracts entered into by the city prior to August, 1920. *Page 444 
2. That the provisions of the finance act were compiled with, and the bonds were ready for sale and delivery to the purchaser.
3. That the sale of the bonds was advertised twice, but no sale was made, because no bidder offered to pay par for the bonds.
4. That these conditions existed when the General Assembly met in Special Session in 1920, when an act was passed authorizing the cities, towns, townships and school districts in Wayne County to sell bonds at less than par, "Within four months after the ratification of this act, for the purpose of paying indebtedness heretofore incurred and now due or to become due within six months, or for the purpose of paying the cost of public works, improvements, or properties for the making or acquisition of which an outstanding contract has heretofore been entered into by the city, town, township, or school district, as the case may be."
5. That the indebtedness of the city for which bonds are offered for sale comes within the description in said act.
6. That pursuant to said act said bonds have again been offered for sale, and they will be sold at less than par if no better bid is offered, the right to reject all bids being however reserved.
That on 14 October, 1920, and since the institution of this suit, after advertising in the Goldsboro Daily Argus, The Raleigh News Observer, TheBond Buyer of New York, the city opened bids for said bonds, the best bid received for said bonds pursuant to said advertisement being less than ninety-six. That the board of aldermen rejected all of said bids, and on the following day sold said bonds to the Wayne National Bank of Goldsboro at ninety-six and accrued interest, the Wayne National Bank acting as agent in said purchase for New York and Toledo bond buyers.
That said bonds were duly executed, and were in New York City at the time of the sale; that delivery of the bonds was to be made in New York City; that payment of both principal and interest of the bonds are to be made in New York City.
That there is no intent to evade the usury laws of this State, but in good faith to meet the urgent, necessary, and immediate needs of the city in the sale of said bonds.
That unless the city can legally deliver and receive payment for said bonds there is an immediate and eminent danger that the city will have to default in the payment of its obligations.
His Honor refused to restrain the sale of the bonds, and the plaintiff excepted and appealed.
The plaintiff raises several constitutional questions, which we will consider in their order, first laying down the rules formulated by the experience of the past as safe guides when an act of the legislative branch of the Government is attacked upon the ground that it violates some provision of the Constitution.
"The power of the General Assembly to pass all needful laws, except when barred by constitutional restrictions, is plenary." Shelby v. Power Co.,155 N.C. 196.
"Every presumption is in favor of the validity of an act of the Legislature, and all doubts are resolved in support of the act. In determining the constitutionality of an act of the Legislature, courts always presume in the first place that the act is constitutional. They also presume that the Legislature acted with integrity and with an honest purpose to keep within the restrictions and limitations laid down by the Constitution." Lowery v. School Trustees, 140 N.C. 40.
The right to declare an act unconstitutional "Should be exercised sparingly, and the conflict between the fundamental law and the legislation should be manifest, and clear beyond any reasonable doubt. We should endeavor, by the use of all reasonable logic, to harmonize the two, and only resort to the power as a last expedient, where our plain duty requires us to exercise it in order to preserve the supremacy of the Constitution."Johnson v. Board of Education, 166 N.C. 472.
"It is a well recognized principle of statutory construction that `A court will not adjudge an act of the Legislature invalid unless its violation of the Constitution is, in their judgment, clear, complete, and unmistakable.' Black Court Law, p. 61. And that as between two permissible interpretations, `That construction of a statute be adopted which will uphold the law.'" Bonitz v. School Trustees, 154 N.C. 379.
The courts have no power to declare an act unconstitutional because "it is opposed to the spirit supposed to pervade the Constitution," or "is against the nature and spirit of the Government," or "is contrary to the general principles of liberty," or "because they may be harsh and may create hardships or inconvenience," or "upon the grounds of inexpediency, injustice, or impropriety," or "because not wise or against public policy."
"The courts are not the guardians of the rights of the people against oppressive legislation which does not violate the provisions of the Constitution. . . . The propriety, wisdom, and expediency of legislation is exclusively a legislative question and the courts will not declare a statute invalid because in their judgment it may be unwise or detrimental to the best interests of the State. . . . The only question for the courts to decide is one of power, not of expediency, and statutes will not be declared void simply because, in the opinion of the Court, they are unwise." 6 R. C. L., 104, et seq. *Page 446 
"The Legislature, being familiar with local conditions, is primarily the judge of the necessity of such enactment, the mere fact that a court may differ with the Legislature in its views of public policy, or that judges may hold views inconsistent with the propriety of this legislation in question, affords no ground for judicial interference, unless the act is unmistakably in excess of legislative power." McLean v. Arkansas,211 U.S. 539.
The legislative construction of a statute, while not binding on the courts, "is entitled to great weight." Sash Co. v. Parker, 153 N.C. 134.
Let us then see not whether the statute passed at the Special Session of 1920 authorizing the sale of these bonds at less than par is wise, or in accordance with the best public policy, but is its unconstitutionality "clear, complete, and unmistakable," the rule approved by Hoke, J., in theBonitz case, or is it "manifest and clear beyond any reasonable doubt," which is stated as the correct guide by Walker, J., in the Johnson case, because this is the test, and unless we can so say, resolving doubts in favor of the statute, we are required to uphold and sustain it.
The plaintiff contends:
1. That the act passed at the Special Session 1920, authorizing a sale of the bonds at less than par, is in conflict with Art. VIII, sec. 1, of the Constitution, which provides: "No corporation shall be created, nor shall its charter be extended, altered, or amended by special act, except corporations for charitable, educational, penal, or reformatory purposes that are to be and remain under the patronage and control of the State; but the General Assembly shall provide by general laws for the chartering and organization of all corporations, and for amending, extending, and forfeiture of all charters, except those above permitted by special act."
The answer is that the defendant is a public corporation, and sec. 1 of Art. VIII "would seem clearly to have reference to private or business corporations, and does not refer to public or quasi-public corporations acting as governmental agencies." Mills v. Comrs., 175 N.C. 219, approved on this point at this term in Dickson v. Brewer, ante, 403.
If argument was needed in support of this authority it is found in the fact that the section is in an article, entitled "Corporations other than municipal," section 2 deals with "dues from corporations," section 3 defines corporations as including "associations and joint-stock companies," circumstances referable naturally to private corporations, and if section 1 includes public corporations, section 4, which properly belongs in Article VII, serves no purpose.
Again, section 1 only prohibits the enactment of a "special act," and an act applicable to all the municipal corporations of Wayne County, including cities, towns, townships and school districts, is not special. *Page 447 
In Williams v. Comrs., 119 N.C. 520, approved in Herring v. Dixon,122 N.C. 423, and in R. R. v. Cherokee County, 177 N.C. 92, it was held that a statute authorizing a special county tax for the purpose of maintaining public ferries, public roads, and meeting other current expenses of Craven County, was not for a special purpose within the meaning of sec. 6, Art. V, of the Constitution. In Brown v. Comrs., 173 N.C. 598, that "The amendment of 1916 to our Constitution, Art. II, sec. 29, prohibiting the passage by the General Assembly of local, private, or special acts `authorizing the laying out, opening, altering, maintaining, or discontinuing of highways, streets, or alleys,' does not include within its meaning an act authorizing a county to issue bonds for the highways of a township," and the same conclusion was reached in Mills v. Comrs.,175 N.C. 216, in which an act authorizing an issue of bonds to build bridges across the Catawba River was sustained, and in Parvin v. Comrs.,177 N.C. 508, sustaining an act allowing Beaufort County to issue bonds for roads, and none of the acts considered in these cases were broader in scope, or more comprehensive as to subject-matter than the one before us.
2. That the act is in conflict with Art. VIII, sec. 4, of the Constitution, which is as follows: "It shall be the duty of the Legislature to provide by general laws for the organization of cities, towns, and incorporated villages, and to restrict their power of taxation, assessment, borrowing money, contracting debts, and loaning their credit, so as to prevent abuses in assessment and in contracting debts by such municipal corporations."
The position of the plaintiff is that the duty imposed on the General Assembly to pass general laws operates to prevent the enactment of all special laws relating to municipal corporations, and if this can be maintained the General Assembly has no power to incorporate a city or town, or to amend its charter or to authorize it to issue bonds or to confer any other power, whatever may be the needs of the particular locality, and the special acts of 1917 authorizing fifteen bond issues and granting or amending thirty-eight charters, and of 1919 having the same effect as to twenty-five bond issues and forty-one charters, are void.
Evidently the General Assembly has not put this construction on the amendments to the Constitution.
Judge Dillon, one of the ablest and most learned of American lawyers, discusses at some length express prohibitions in Constitutions against special legislation (Dillon Munic. Corp. (5 ed.), vol. 1, sec. 141), and concludes: "Thirty years experience with these general constitutional interdicts against local and special legislation have impressed the author with the conviction that they have failed to produce the beneficial results anticipated, and that this has been brought about because the prohibitions *Page 448 
of special legislation are too broad and sweeping. Special legislation in some form is often necessary, and it should be allowed, but carefully safeguarded. . . . Municipal administration is essentially local in its nature, and local features, peculiar to a single municipality, naturally call for special legislation. . . . The constitutional provisions were generally adopted about thirty years ago, and thirty years experience of legislation under their provisions gives grave reason to fear that, so far from being effective, they have not prevented legislation intended to have a special and local operation, and have caused endless uncertainty and confusion. . . . The application of constitutional provisions prohibiting special legislation has proved to be fraught with so many difficulties and to have resulted in so many inconsistencies that it may be doubted whether any lasting benefit has been derived from their adoption. . . . Special legislation to meet the wants, requirements, and special needs of each municipality, rather than general laws exclusively, is consonant with the fundamental principle and policy of local self-government and home rule, and in our judgment the true remedy is not absolutely and sweepingly to prohibit such legislation, but to safeguard it from legislative abuse. Such is the plain lesson taught by thirty years experience."
This section (Art. VIII, sec. 4), as said in French v. Comrs.,74 N.C. 692, imposes on the Legislature "a moral obligation." It contains no prohibition on the exercise of legislative power, and has in it no declaration that private, local, or special acts shall not be passed relating to the organization of cities and towns, and conferring particular powers, and this omission, when considered in connection with the history of the recent amendments to the Constitution, is fatal to the claim that local or special acts may not be legally enacted, conferring special authority on municipal corporations.
The sessions of the General Assembly are practically limited to sixty days, and so much of its time was consumed in dealing with private and local bills that legislation of State-wide importance could not receive proper and deliberate consideration.
The General Assembly of 1915 undertook to remedy this evil by submitting several amendments to the Constitution, which were adopted at the election in 1916.
The first amendment requires the General Assembly to pass general laws on fourteen subjects, and declares "the General Assembly shall not pass any local, private, or special act or resolution" relating to them.
Among these subjects is "changing the names of cities, towns, and townships."
The second amendment authorizes the appointment of emergency judges, under certain conditions, and is not material. *Page 449 
The third strikes out the first section of Article VIII, and substitutes the section quoted above, and it will be noted that the old section provided for the organization of private corporations under general law, without prohibiting special legislation, while the new section prohibits a special act.
The fourth submits section 4 of Article VIII as it now stands, instead of section 4 as it was before it was amended, the only change being the insertion of the words "by general laws."
It is thus seen that the General Assembly had in mind and fully realized the evils of special, local, and private acts, and that it adopted a complete and comprehensive scheme by constitutional amendment as a remedy; that in doing so such legislation was expressly prohibited on fourteen subjects, including "changing the names of cities, towns, and townships"; that granting a charter to a private corporation or amending the same by special act was prohibited, but when it came to the municipal corporation the Legislature is left free and without express restraint, although since 1868 more than a thousand special acts have been enacted in reference to municipal corporations. Why should there be prohibitions on legislative action in amendments one and three and none in four, if the same restraint was to operate on all?
Why should it be said in amendment one, "The General Assembly shall not pass any local, private, or special act relating to `changing the names of cities, towns, or townships,'" if section 4 prohibits special legislation relating to municipal corporations, which would include legislation changing the name?
When it is remembered that the amendments were submitted at the same time as parts of one scheme to get rid of special legislation as far as practicable; that special acts relating to municipal corporations were more numerous than any one other subject; that cities and towns are referred to in amendment one, but only in reference to changing the name; that there is positive restraint on legislative action as to all subjects except those embraced in section 4, and no restraint in that one, is it not clear that the true intent of the last section is to impose the duty of passing general laws relating to cities and towns, leaving it to the discretion of the Legislature to enact special acts as the needs of the municipalities may require?
The reason for making this distinction is that the needs of the different communities are so diverse that no Legislature could foresee the emergencies that would arise in different localities, or the necessity for additional powers dependent on changing conditions, and could not provide for them by general legislation, and the present case is an apt illustration of the wisdom of this course. *Page 450 
When the finance act was passed, declaring that municipal bonds should not be sold at less than par, there was a ready market for bonds, while now it is impossible to find a purchaser except at a discount, and already not only Wayne County towns, but also Tarboro, Plymouth, Roanoke Rapids School District, and Guilford County have applied for authority to sell for a less price as is shown by the acts of the special session, and the authority has been granted.
It may well be said of the failure to prohibit special legislation in Article VIII, section 4, as was said by Rodman, J., in French v. Comrs.,supra, of the refusal to limit the rate of taxation of cities and towns in the Constitution, "The omission was of purpose. It was unwise to establish in a law, which was expected to be comparatively permanent, the same maximum rate of taxation for all the cities and towns in the State, with population and other conditions so different."
However this may be, there is no prohibition in section 4, and "in the absence of an express constitutional provision to the contrary, the Legislature may enact special and local laws with respect to the establishment and government of municipal corporations. There is no constitutional objection to a law which is in fact applicable to but a single city or town." 19 R. C. L., 739.
The case of Stuart v. Kirley, 12 South Dakota, 245, is directly in point, as it was held in that case that the Legislature could enact a special act changing the boundaries of a particular county, although the State Constitution declared that "The Legislature shall provide by general law for changing county lines."
The case principally relied on by the plaintiff, 4 Kansas, 124, approved in 5 Kansas, 603, has language in it which sustains the position of the plaintiff, but it was not necessary to the decision of the case because the Court had already held that the statute then under consideration was void under an express prohibition in the Constitution, and if the case is authority at all on this point, and should be followed, it would prohibit all acts of the Legislature in regard to municipal corporations, including the granting of charters, their amendment, extension of boundaries, etc.
The preamble to the finance act furnishes an argument that the Legislature of 1917 was of opinion that the amendment of 1916 is mandatory, to the extent that it imposes the duty to pass a general law, but not that it prohibits a special act, and in any event the Legislature of 1919 was of a different opinion, as it repealed the preamble (ch. 178, Laws 1919), and it is now no part of the finance act.
3. That the act confers special privileges, and is therefore in conflict with section 7, Article I, of the Constitution, which declares: "No man *Page 451 
or set of men are entitled to exclusive or separate emoluments or privileges from the community but in consideration of public services."
Answering a similar objection in Reid v. R. R., 162 N.C. 359, the Court says: "Nor will the second objection avail plaintiff, that the act violates the section of the Constitution which prohibits the granting of special privileges and emoluments. The very section relied on by the appellant closes with the exception, `but in consideration of public services,' and under our decisions these franchises granted to public-service corporations come directly within the words and meaning of the exception. In re SpeaseFerry, 138 N.C. pp. 219-222."
In Power Co. v. Power Co., 175 N.C. 677, it was objected that the right of eminent domain could not be conferred on one electric company, and the Court says: "Such a right has been conferred in many instances, especially in the case of railroad companies and other like corporations which serve the public. It is not forbidden to be done by our Constitution, Art. I, sec. 7 (Bill of Rights), which declares that `no man or set of men are entitled to exclusive or separate emoluments or privileges from the community, but in consideration of public services,' because in this case the power to condemn is based upon the obligation to render that kind of service."
Surely if this principle avails the railroad and electric company, it will be applied in behalf of the municipal corporation, an agency of the State, created for the benefit of the public.
These are the constitutional objections, and no other can justify setting aside an act of the General Assembly, but there are others growing out of certain legislation, which may well be considered, although it should be sufficient to say that no Legislature can by general or special act bind its successor.
4. It is urged that the General Assembly, acting under the authority of Article VIII, section 4, of the Constitution, adopted the finance act, which requires bonds to be sold at part, and that the Wayne County act is in conflict with the general law, and should be set aside.
All acts of the Legislature are passed under constitutional authority, and if the position of the plaintiff can be maintained, it would withdraw from subsequent Legislatures the power of amendment or repeal.
The finance act is simply a legislative act, not a constitutional provision, and like other acts is subject to change at the will of the Legislature. Bramham v. Durham, 171 N.C. 197, is very much in point.
In 1915 (ch. 56) an act relating to local improvements, applicable to all municipalities, was adopted, acting under this section of the Constitution, and authorizing issues of bonds without a vote of the people. At the same session there was another act, confined in its operation to Durham, authorizing an issue of bonds for street improvements, *Page 452 
but requiring a vote of the people, and it was held that the two acts must be construed together, that the latter was in effect an exception from the first, and must be followed.
The Court, speaking through Hoke, J., says: "It is a well recognized principle of statutory construction that when there are two acts of the Legislature applicable to the same subject, their provisions are to be reconciled if this can be done by fair and reasonable intendment, but, to the extent that they are necessarily repugnant, the latter shall prevail. The position is stated in substantially these terms by Associate JusticeField in U.S. v. Tynen, 78 U.S. 92, as follows: `Where there are two acts on the same subject, the rule is to give effect to both, if possible; but if the two are repugnant in any of their provisions, the latter act, and without any repealing clause, operates to the extent of the repugnancy as a repeal of the first'; and in Sedgwick on Statutory Construction, p. 127, quoting from Ely v. Bliss, 5 Beavan, it is said: `If two inconsistent acts be passed at different times, the last is to be obeyed, and if obedience cannot be observed, without derogation from the first, it is the first that must give way.'
"Again, it is established that where a general and a special statute are passed on the same subject, and the two are necessarily inconsistent, it is the special statute that will prevail, this last being regarded usually as in the nature of an exception to the former. Cecil v. High Point,165 N.C. pp. 431-435; Comrs. v. Alderman, 158 N.C. pp. 197-198; Dahnke v.ThePeople, 168 Ill. 102; Stockett v. Bird, 18 Md. 484, a position that obtains though the special law precedes the general, unless the provisions of the general statute necessarily excludes such a construction. Rodgers v.U.S., 185 U.S. 83; Black on Interpretation of Laws, p. 117."
This case was approved in Power Co. v. Power Co., 171 N.C. 255, in an opinion by Walker, J., who adds: "Where a later special law, local or restricted in its operation, is positively repugnant to the former law, and not merely affirmative, cumulative, or auxiliary, it repeals the older law by implication pro tante, to the extent of such repugnancy within the limits to which the latter applies. McGavick v. State, 30 N.J. L., 510;Township of Harrison v. Supervisors, 117 Mich. 215; R. R. v. Ely,95 N.C. 77. `The well settled rule of construction, where contradictory laws come in question, is that the law general must yield to the law special.' Moy's Maxims, 19. S. v. Clark, 25 N.J. L., 54."
There is no conflict between the two acts, and the latter should be read as an exception to the former.
5. It is further contended that the sale of the bonds at less than par is usurious and in conflict with the general law fixing the rate of interest in the State. If this was true it would furnish no reason for refusing *Page 453 
to give effect to the Wayne County act, because usury laws may be changed at will, but the transaction is not usurious, the sale of bonds being dealt with as a sale of chattels.
In 39 Cyc., 936, after stating that the delivery of a note by the maker to a purchaser at less than its face value is usurious, the author, Prof. Vance of the Yale Law School, says: "In some jurisdictions the principle just stated is applied to issues of municipal and other bonds purchased directly from the corporation at a discount greater than legal interest. But by the weight of authority such bonds are regarded as having a valid existence and transferable quality in the hands of the issuing corporation, and thus subject to sale at their market value, which may be at a discount much greater than legal interest, without making them subject to the taint of usury in the hands of an immediate purchaser."
In Bank v. Mfg. Co., 96 N.C. 298, it was held that a sale of bonds of the face value of $45,000 for $30,000 was not usurious, and the same conclusion reached in R. R. v. Ashland, 79 U.S. 226, upon the ground that a sale of bonds was as the sale of any other chattel, where the bonds bore ten per cent interest on their face, and were sold to a corporation limited by its charter to taking more than seven per cent.
The following authorities also sustain this fully: Orchard v. SchoolDistrict, 14 Neb. 379; Griffith v. Burden, 35 Iowa 143; Gamble v. 2 C. W.Co., 123 N.Y. 93; Memphis v. Bethel (Tenn.), 17 S.W. 193; Coe v.Railroad (Ohio), 75 A. D., 518; Memphis v. Brown, 16 Fed. Cases, No. 9415.
The most interesting and instructive of these is the Iowa case, which says: "Under the more modern rule respecting municipal and corporation bonded indebtedness, whether the power to issue the bonds is derived from authority to `borrow money,' to `negotiate a loan,' to `fund its indebtedness,' to `contract a debt and issue its bonds therefor,' to `issue and sell its bonds not exceeding,' etc., or, generally, to do any act or accomplish any work requiring, or which may properly be effectuated by the issuance of bonds, the power to sell the bonds in the market directly by the officers and agents of the municipality or corporation issuing them is well established. In other words, the authority to sell the bonds in the market is an incident attendant upon and growing out of the power to issue them. And it follows, hence, that the right and title of the first purchaser, directly from the municipality or corporation, is as perfectly and fully enforced and protected as if he were a third person buying the bonds in a subsequent market sale. The character of a chattel attaches to them under such circumstances, and the title passes as effectually as if they were chattels fairly sold at their market value, and no equities, such as might attach under like circumstances *Page 454 
to ordinary commercial paper, can be interposed as a defense, total or partial, in an action upon them. As was decided by a very able Court, in one of the many cases we have carefully examined: `The obvious interest of the companies is that these bonds should be saleable, free from all questions of equity. They are generally issued for the express purpose of raising money by their sale. To declare them subject to the equities existing in the case of ordinary bonds, upon every transfer of them, would be to strike a blow at the credit of the great mass of these securities now in the market, the consequence of which it would be impossible to predict.'The Morris Canal Bank Co. v. Fisher, 1 Stock., ch. 667 (i. e., 700).
"This character of chattels, which by the modern rule it attached to these securities, must also, upon principle, exempt them from the defense of usury (as has been done by express statute in several of the States). For, if they are regarded as chattels, and this character is accorded to them in order to promote their sale and enhance their value as investments, then, since usury cannot be predicated upon a sale of chattels merely, neither can it be predicated upon a sale of bonds having the recognized character of chattels."
6. It is also urged that the act is not general in its application, and that it permits the municipal corporations of Wayne County to sell bonds at less than par when the same privilege is not granted in other localities.
In Power Co. v. Power Co., supra, this objection is met and the rule approved which is stated by Judge Cooley, as follows: " `The authority which legislates for the State at large must determine whether particular rules shall extend to the whole State and all its citizens, or, on the other hand, to a subdivision of the State or a single class of its citizens only. The circumstances of a particular locality, or the prevailing public sentiment in that section of the State, may require or make acceptable different police regulations from those demanded in another, or call for different taxation and a different application of the public moneys. The Legislature may, therefore, prescribe or authorize different laws of police, allow the right of eminent domain to be exercised in different cases, and through different agencies, and prescribe peculiar restrictions upon taxation in each district or municipality, provided the State Constitution does not forbid. These discriminations are made constantly, and the fact that the laws are of local or special operation only is not supposed to render them obnoxious in principle.'
"And in the same work, at p. 554, note 2, it is said: `To make a statute a public law of general obligation, it is not necessary that it should be equally applicable to all parts of the State. All that is required is that it shall apply equally to all persons within the territorial *Page 455 
limits described in the act,' citing S. v. County Commissioners ofBaltimore, 29 Md. 516; Pollock v. McClurken, 42 Ill. 370; Haskel v.Burlington, 30 Iowa 232; Unity v. Burrage, 103 U.S. 447."
In S. v. Moore, 104 N.C. 720; S. v. Blake, 157 N.C. 608, and in Newellv. Green, 169 N.C. 462, numerous instances are given of valid laws applicable to particular localities, the rule being as stated in the Moorecase, and approved in the Blake case: "If the laws be otherwise unobjectionable, all that can be required in these cases is that they be general in their application to the class or locality to which they apply, and that they are public in their character, and of their propriety and policy the Legislature must judge."
We have in this State two well recognized exceptions to the usury statute, one allowing banks to take interest in advance (Rev., 228), which in the private individual would be usury, and the other, which is a part of the usury statute, permitting the bonds of private corporations to be sold at less than par, and it was held in Bank v. Mfg. Co., 96 N.C. 298, that a sale of bonds of the part value of $45,000 for $30,000 by a private corporation was not usurious.
7. The last objection is that the News and Observer is not a financial paper within the meaning of the amendment to the finance act at the special session, requiring a certain notice to be published "in a financial paper or trade journal," but it is agreed that this paper, in addition to publishing general news, "also regularly publishes news relating to financial matters, and also publishes from time to time notices of proposed sales of municipal bonds of municipalities in North Carolina," which is a sufficient compliance with the statute.
The fact that the bonds were sold privately for a higher price than could be obtained at public sale, and after three efforts to sell after due advertisement, does not invalidate the sale.
The statute of 1920 has been passed to meet a pressing emergency, and is of limited duration, and as we find no constitutional objection to its enactment, it must be sustained.
Affirmed.