ADAMS and CLARKSON, J.J., concurring.
BROGDEN, J., dissenting.
STACY, C. J., concurs in dissent.
This is a controversy without action submitted to the Superior Court of Carteret County by the parties thereto, in accordance with the provisions of C. S., 626.
The cause was heard by his Honor, J. Paul Frizzelle, judge holding the courts of the Fifth Judicial District, at his Chambers, in the town of Snow Hill, N.C. on 23 September, 1933, on an agreed statement of facts which is duly verified as required by the statute.
The agreed statements of facts, together with the questions of law in difference between the parties, which arise upon said facts, are substantially as follows:
1. The Port Commission of Morehead City is a corporation created by the General Assembly of North Carolina, by statute duly enacted at its regular Session in 1933. Chapter 75, Private Laws of North Carolina, Session 1933. The members of said commission have been duly appointed, and have duly organized by the election of a chairman, secretary and treasurer, as required by said act. The said commission is now engaged in the performance of its duties as imposed by the act of the General Assembly, and in the exercise of its powers as conferred by said act.
2. Section 2 of said act is as follows: "Sec. 2. The said Port Commission shall have power:
(1) To sue and be sued in the name of the Port Commission; to acquire by purchase and condemnation, and to hold lands for the purpose of constructing, maintaining or operating the terminal or terminals hereinafter referred to; and to make such contracts and to hold such personal property as may be necessary for the exercise of the powers of said Port Commission.
(2) To charge and collect reasonable and adequate wharfage fees and other fees, tolls or dues for the use of such city terminal or terminals, or for the service rendered in the operation thereof.
(3) To develop the port facilities of Morehead City by acquiring by purchase (construction or otherwise), improving, maintaining, and operating a city terminal or terminals for said city, upon the water front of said city, including all necessary wharves, piers, bulkheads, *Page 666 
slips, docks, sheds, warehouses, elevators, and railroad and steamship facilities, and also necessary lands, rights in lands and water rights, to be used and operated for the following purposes, namely: for the landing, loading and unloading of vessels, for the loading and unloading of railroad cars or other carriers, for the interchange or transfer of goods, merchandise or other property between vessels, railroad cars or other carriers, and for the temporary shelter or storage of goods, merchandise or property carried or about to be carried by such vessel, railroad cars or other carriers.
(4) To issue bonds and/or other securities or obligations for the purpose of providing funds for such construction, maintaining and/or operating the said terminal or terminals. Said bonds, if and when so issued, shall be denominated `Port Commission Bonds of Morehead City.' and shall be issued in such form and denominations and shall mature at such time or times, not exceeding fifty years after their date, and shall bear such rate of interest, not exceeding six per cent per annum, payable either annually or semiannually, as the said Port Commission may determine. The bonds shall be signed by the chairman of said Port Commission Board, and its corporate seal affixed or impressed upon each bond and attested by the secretary to said board. The coupons to be attached to said bonds shall bear the facsimile signature of the chairman officiating at the time of the issuance of said bonds. Such bonds and/or notes issued for the purpose or purposes above set out may be sold at private sale, for not less than par, to the Reconstruction Finance Corporation or other governmental agency, with the approval of the board of commissioners of Morehead City; but if such private sale is not so made to said Reconstruction Finance Corporation or other governmental agency, then the sale shall be made under the provisions of the Municipal Finance Act of the State and with the approval of the Local Government Commission.
Bonds and notes issued under this act shall be exempt from all State, county or municipal taxes or assessments, direct or indirect, general or special, and the interest paid on said bonds or notes shall not be subject to taxation as income, nor shall said bonds or notes, or coupons on said bonds, be subject to taxation when constituting part of the surplus of any bank, trust company or other corporation.
(5) Any resolution or resolutions authorizing any bonds may contain provisions which shall be part of the contract with the holders of the bonds, as to:
(a) Pleading the wharfage fees and other fees, tolls, dues or other revenues to secure the payment of the bonds;
(b) The rates of the tolls to be charged for the use of the facilities of the terminal or terminals, and the use and disposition of the tolls and other revenues; *Page 667 
(c) The setting aside of reserves or sinking funds and the regulation and disposition thereof;
(d) Limitation on the purposes to which the proceeds of sale of any issue of bonds to be issued may be applied;
(e) Limitation on the issuance of additional bonds;
(f) The procedure, if any, by which the terms of any contract with bondholders may be amended or abrogated, the amount of bonds the holders of which must consent thereto, and the manner in which such consent may be given.
(g) To do all things necessary or convenient to carry out the powers expressly given in this act."
3. The Port Commission of Morehead City has filed with the Public Works Administration, at Washington, D.C., an application for a loan with which to provide funds for acquiring, constructing, maintaining, and/or operating terminal and terminal facilities at Morehead City, and is proposing to issue bonds and/or other securities or obligations for the purpose of procuring said loan. The bonds when so issued are to be denominated "Port Commission Bonds of Morehead City," and are to be issued in such form and denominations, and will mature at such time or times, not exceeding fifty years from their date, and will bear interest at such rate, not exceeding six per cent per annum, as the said Port Commission may determine, with the approval of the Public Works Administration, and not inconsistent with chapter 75, Private Laws of North Carolina, Session 1933. The bonds are to be signed by the chairman of said Port Commission, and shall have affixed thereto or impressed thereon the corporate seal of said commission, attested by its secretary. The coupons to be attached to said bonds will bear the facsimile signature of the chairman of said commission, officiating at the time of the issuance of said bonds. It is proposed that the said commission shall sell said bonds at private sale, for not less than par, to the Public Works Administration or other governmental agency; and that if such sale be not made to such governmental agency, then the sale shall be made under the provisions of the Municipal Finance Act of the State of North Carolina, with the approval of the Local Government Commission of said State.
4. Section 6 of said act is as follows: "Sec. 6. All wharfage fees and other fees, tolls, dues or other revenues derived by the Port Commission from the operation of such terminal or terminals shall be applied to the payment of the cost of operation and administration of said terminal or terminals (including interest on bonds or other evidences of indebtedness issued therefor, and the cost of insurance against loss by injury to persons or property) and the balance to be paid to the treasurer and to be used for the purpose of providing a sinking fund with *Page 668 
which to pay at or before maturity all bonds and/or notes or other evidences of indebtedness incurred for or on behalf of the building, constructing, maintaining and operating said terminal."
5. Section 7 of said act is as follows: "Sec. 7. Whenever the said Port Commission shall determine that such wharfage fees, and other fees, tools, dues and other revenues will be or are insufficient to pay in any year the cost of operation and administration of said terminal or terminal facilities (including interest on bonds or other evidences of indebtedness issued therefor, and the cost of insurance against loss by injury to persons or property) and sinking fund requirements for such year, it shall certify to the board of commissioners of Morehead City the amount of such anticipated or existing deficiency, and upon receipt of such certificate it shall be the duty of said board of commissioners of Morehead City to cause to be levied on all the taxable property within the territorial limits of said city in the same manner as other city taxes are levied, a special tax in an amount sufficient to meet such deficiency, not exceeding, however, an amount equivalent to ten cents on each one hundred dollars of taxable values for the year or years in which such levy is sought and/or required to be made, and the tax so levied shall be in addition to all other taxes authorized by law to be levied in said municipality; and the authorization for such levy and the levy of such taxes for said special purposes are hereby declared to be levies for necessary purposes, notwithstanding any prohibition in any general or special acts now existing. Any indebtedness incurred by said Port Commission pursuant to this act shall not be taken into consideration in determining the power of the city of Morehead to become further indebted; Provided, however, that the board of commissioners of Morehead City shall not make or cause to be made such tax levy as above provided for until there first shall have been submitted to the qualified voters of said municipality the question of special tax levy for the indicated purpose and a majority of the qualified voters shall have voted in favor of such special levy."
6. The bonds which the Port Commission of Morehead City proposes to issue and sell in order to procure funds to enable said commission to perform the duties imposed upon said commission by the act of the General Assembly, will not be issued in the name of the town of Morehead City, or in the name of the State of North Carolina. Neither the State nor said municipality will be obligated for the payment of said bonds, or of interest on the same. No tax will, or can be levied upon the taxable property within the territorial limits of the town of Morehead City, until such tax has been approved by a majority of the qualified voters of said town at an election to be called by its board of commissioners, in accordance with the provisions and subject to the *Page 669 
limitations of the act of the General Assembly creating the Port Commission of Morehead City.
7. Section 11 of the act is as follows: "See. 11. It is hereby declared to be the policy of the State of North Carolina to promote, encourage, and develop water transportation, service, and facilities in connection with the commerce of the United States, and to foster and preserve in full vigor both rail and water transportation, and that Morehead City, North Carolina, is hereby declared to be a port to be developed in connection with the interior of the State of North Carolina and other states, and it is hereby declared and deemed by the State of North Carolina, necessary and desirable, and in the public interest of the entire State that there shall be established through Morehead City, through connecting water and rail rates in connection with shipping companies, and other transportation companies and in accordance with the provisions of the acts of Congress of the United States, and the laws of North Carolina. The said Port Commission shall be regarded as performing an essential governmental function in undertaking the construction, maintenance and operation of the said terminal or terminals, and in carrying out the provisions of this act in relation thereto, and shall be required to pay no taxes or assessment upon any of the properties acquired or used by it for such purposes."
8. Chapter 75, Private Laws of North Carolina, Session 1933, was ratified on 22 March, 1933. It has been in full force and effect since the date of its ratification.
The questions of law which arise on the foregoing facts, involve:
"1. The constitutionality of chapter 75, Private Laws of North Carolina, Session 1933.
2. The validity of the bonds which the Port Commission of Morehead City propose to issue under the authority of said act.
3. The issuing authority of said bonds, whether the Port Commission of Morehead City or the town of Morehead City.
4. Whether the bonds are for `necessary expenses' within section 7. Article VII of the Constitution of North Carolina.
5. Whether an election, to be called and held in the town of Morehead City, at which the majority of the qualified voters of said town shall approve the issuance of said bonds, is required as a condition precedent to the issuance of said bonds.
6. Whether the bonds if issued and sold by the Port Commission of Morehead City will be subject to any debt limit other than as specified in the act.
7. The term and maturities of said bonds as related to the period of usefulness of the project. *Page 670 
8. The authority of the Port Commission of Morehead City to charge fees and tolls for the services rendered by the project, to pledge the revenues thereof, and to limit the issuance of additional bonds.
9. The application of the Local Government Act of North Carolina to the issuance of said bonds and the functioning of the said Port Commission.
10. The application of the Municipal Finance Act to the issuance of said bonds.
11. The constitutionality of the provisions of said act exempting the property and bonds of the Port Commission from any and all taxation."
Upon consideration of the foregoing facts, the court determined the questions of law arising thereon, and ordered and adjudged as follows:
(a) That chapter 75, Private Laws of North Carolina, Session 1933, is in all respects constitutional and a valid enactment.
(b) That the bonds issued and/or to be issued in conformity with the provisions of said act of the General Assembly of North Carolina are/or will be valid obligations of the Port Commission of Morehead City.
(c) That the issuing authority under the aforesaid act of the General Assembly of North Carolina is the Port Commission of Morehead City.
(d) That the bonds of said Port Commission of Morehead City provided for in said act as, if and when issued constitute valid obligations for necessary expenses within the expressed terms of the act creating said Port Commission, and by reason of the legislative declaration as to the location and condition of the property affected with the governmental functions imposed upon the said Port Commission form a necessary expense within a proper construction of Article VII, section 7, of the Constitution of North Carolina.
(e) That no election is necessary or required as a condition precedent to the issuance of the said bonds proposed to be issued by the said Port Commission of Morehead City.
(f) That said bonds are subject to no debt limitation other than as specified in the act authorizing the issuance of the same.
(g) That the term and maturities of the bonds proposed to be issued by said Port Commission are shorter in term of duration than the life of the utility of the project, as said maturities are limited to twenty-five years and the period of usefulness of the project by the issuance of said bonds is assured an increasing usefulness limited only to the life of the community in which the project is intended to function.
(h) That the act of the General Assembly of North Carolina creating the Port Commission of Morehead City, constitutional in all its provisions, bestows ample authority on said Port Commission to charge fees and tolls for services rendered, to pledge the revenues derived from said project, and to limit the issuance of additional bonds. *Page 671 
(i) That the provisions of the Local Government Act are not applicable in any respect unless it is proposed that the said bonds of the Port Commission of Morehead City shall be sold to others than the Reconstruction Finance Corporation, Public Works Administration, or other governmental agency, in which case the sale shall be made with the approval of the Local Government Commission of North Carolina.
(j) That the Municipal Finance Act of North Carolina has no application to the issuance of bonds by the Port Commission of Morehead City or to the incurring of any other form of obligation by the said Port Commission, nor to the sale of such bonds unless said bonds are sold to some person other than the Reconstruction Finance Corporation, Public Works Administration or other governmental agency.
(k) That the exemption of the property of said Port Commission of Morehead City and of its bonds from taxation, is constitutional and said exemption is expressly provided in the act of the General Assembly of North Carolina, creating said commission, which expressly provides that the said Port Commission `shall be regarded as performing an essential governmental function in undertaking the construction, maintenance, and operation of the said terminal or terminals . . . and shall be required to pay no taxes or assessment upon any of the properties acquired or used by it for such purposes' and `that bonds and notes issued under this act shall be exempt from all taxes.'"
The plaintiffs excepted to the foregoing judgment and to every part thereof, and appealed to the Supreme Court.
It is contended on behalf of the plaintiffs, on their appeal to this Court, that chapter 75, Private Laws of North Carolina, Session 1933, is unconstitutional and void, because by its enactment the General Assembly has undertaken to create a corporation by a special act in violation of the prohibition of section 1 of Article VIII of the Constitution of North Carolina. If this contention is sustained, the judgment of the Superior Court is erroneous in all respects, and must be reversed. If, however, the act is constitutional and valid, the Port Commission of Morehead City is a corporation duly created and organized under the laws of this State, with such powers as are conferred upon said corporation by the General Assembly in the exercise of its valid legislative power. In that case, the validity of these powers as set out in the act, is presented by the plaintiffs' exception to the judgment, and must be determined by this Court in disposing of this appeal. If some of these powers are valid, and others invalid, because of constitutional prohibitions, *Page 672 
the judgment must be modified and affirmed. If all the essential powers conferred by the act on the Port Commission of Morehead City, as a corporation, are valid, the judgment must be affirmed. Thus the primary question involved in this appeal is whether the act of the General Assembly creating the corporation is unconstitutional and void, as contended on behalf of the plaintiffs.
Section 1 of Article VIII of the Constitution of North Carolina, is as follows:
"Section 1. Corporations under General Laws No corporation shall be created, nor shall its charter be extended, altered, or amended by special act, except corporations for charitable, educational, penal or reformatory purposes that are to be and remain under the patronage and control of the State; but the General Assembly shall provide by general laws for the chartering and organization of all corporations and for amending, extending and forfeiture of all charters, except those above permitted by special act. All such general laws and special acts may be altered from time to time or repealed; and the General Assembly may at any time by special act repeal the charter of any corporation."
Whether or not chapter 75, Private Laws of North Carolina, Session 1933, is a special act within the meaning of section 1 of Article VIII of the Constitution, is to be determined not by its form or by its publication as a private act, but by its purpose as disclosed by its language, and by what in the ordinary course of things must necessarily be its operation and effect. R. R. v. Cherokee County, 177 N.C. 86, 97 S.E. 758; Hancock v.R. R., 124 N.C. 222, 32 S.E. 679. Whether a statute is public or private, general or special, within the meaning of a constitutional provision affecting its validity for that reason, depends upon its purpose as shown by its contents, and not upon the judgment of a public official, who has directed its publication in the performance of an administrative duty imposed upon him by statute. C. S., 7659.
And so, whether or not the corporation created by chapter 75, Private Laws of North Carolina, Session 1933, and known as the Port Commission of Morehead City, is such a corporation as the General Assembly is prohibited from creating by section 1 of Article VIII of the Constitution, is to be determined by the purposes for which said corporation was created, and the powers which are conferred upon said corporation by the act, and not by a strict and literal construction of the word as used in said section. It has been uniformly held by this Court since section 1 of Article VIII was ratified as an amendment to the Constitution, that the prohibition contained in the section refers to private or business corporations, and not to public or quasi-public corporations created by the General Assembly, as governmental agencies with power to perform governmental functions.Holmes v. Fayetteville, *Page 673 197 N.C. 740, 150 S.E. 624. In that case it is said: "It has been held that this section applies only to private or business corporations and not to those of a public or quasi- public nature, such as cities, towns, and counties. Kornegay v. Goldsboro, 180 N.C. 441, 105 S.E. 187. A municipality furnishing water or light renders service for a public purpose, and the fact that the water or service is furnished for individual consumption or the use of the inhabitants does not detract from the public service. Private purposes may be served incidentally, but this does not destroy the public character of the corporation or municipality. 3 Dillon (5 ed.), sec. 1300." The suggestion to this effect was first made in Boardof Education v. Comrs., 174 N.C. 47, 93 S.E. 383, and was subsequently approved in Mills v. Comrs., 175 N.C. 215, 93 S.E. 481. It may be that in neither of these cases was the question directly presented. The question was, however, directly presented and decided by this Court in Kornegay v.Goldsboro, 180 N.C. 441, 105 S.E. 187, and in Dickson v. Brewer,180 N.C. 403, 104 S.E. 887. In Kornegay v. Goldsboro, supra, it was held that section 1 of Article VIII of the Constitution must be construed in connection with sections 2 and 3 of said article. Applying this principle, it was held that the word "corporation," used in section 1 of Article VIII, must be construed as meaning a corporation created for private or business purposes.
An examination of all the provisions of chapter 75, Private Laws of North Carolina, Session 1933, discloses that the corporation created by said act, to be known as the Port Commission of Morehead City, is not a private or business corporation, but is a public corporation, created by the General Assembly as an agency of the State to perform a well recognized governmental function, to wit: to provide facilities for the transportation of goods, wares and merchandise both into and out of the State by means of carriers over land and water. These facilities will not be constructed, maintained or operated, under the terms of the act, for private gain, but solely in the public interest. Revenues derived from the operation of the facilities will be devoted exclusively to the payment of the expense of their operation and maintenance, and of the interest on the bonds, and of the bonds, at their maturity, which the corporation is authorized to issue to procure funds to defray the expense of constructing, maintaining and operating the said facilities. For these reasons, the statute is not a special act within the meaning of section 1 of Article VIII of the Constitution of this State, nor is the Port Commission of Morehead City such a corporation as the General Assembly of this State is prohibited from creating by said section.
The contention that chapter 75, Private Laws of North Carolina, Session 1933, is unconstitutional and void, because its enactment was *Page 674 
in violation of section 1 of Article VIII of the Constitution of North Carolina, is not sustained. There was no error in the judgment of the Superior Court that said act is constitutional and valid. Its enactment was not in violation of any prohibition of the Constitution of this State.
The Port Commission of Morehead City is a corporation duly created by the General Assembly of this State, in the valid exercise of its legislative power. As such corporation, the said commission has the power to construct, maintain and operate the facilities described in the act, and to charge, and collect fees and tolls from those who avail themselves of the service provided by the said facilities. The revenues derived from the operation of said facilities must be applied solely and exclusively to the payment of the expenses incurred by the commission in operating, maintaining and constructing the said facilities. No part of said revenues can be lawfully applied or appropriated to any other purpose. Under the terms of the act, none of said revenues will be paid to the State of North Carolina, to the town of Morehead City, or to any municipality of the State of North Carolina, unless, of course, the State or some of its municipalities shall become holders of the bonds, which may be issued by the said Port Commission.
The Port Commission of Morehead City, as a corporation duly created and organized under the laws of this State, has the power, expressly conferred upon the corporation, to issue and sell its bonds for the purpose of procuring funds with which to pay for the construction, maintenance and operation of the facilities which the said commission is authorized to construct, maintain and operate at Morehead City. These bonds will not be obligations of the State of North Carolina, of the town of Morehead City, or of any other municipality of this State.
The credit of neither the State, nor of the town of Morehead City, nor of any other municipality of this State, is pledged for the payment of said bonds, or of the interest on the said bonds. The bonds may be issued only on the credit of the Port Commission of Morehead City, as a corporation. The interest on the bonds, and the bonds, as they shall mature, will be paid only out of revenues derived from the operation of the facilities which the Port Commission is authorized to construct, maintain and operate at Morehead City. The provision in the act by which the Port Commission was created that its property and the bonds that may be issued and sold as authorized by the act shall be exempt from taxation by the State, or any of its political subdivisions, is valid. The General Assembly has the power to so provide, for the reason that the property of the Port Commission will be held, and the bonds will be issued solely for public purposes. Whatever doubt *Page 675 
there may be as to the validity of this provision, by reason of section 3 of Article V of the Constitution of this State, must be, under well settled principles of constitutional construction, resolved in favor of its validity. Certainly, if the bonds are sold to an agency of the United States Government, as contemplated by the act, the provision is valid so long as the bonds are held by such agency, or by any person, firm or corporation holding the same by purchase from such agency. The provisions of the act, with reference to the board of commissioners of the town of Morehead City, the Municipal Finance Act of North Carolina, or the Local Government Commission of this State, do not affect the validity of bonds which may be issued and sold by the Port Commission, to an agency of the United States Government. These provisions, applicable only in certain contingencies, are merely a part of the mechanics provided for the issuance of the bonds.
The provisions of the act by which the Port Commission of Morehead City was created, relative to the calling and holding of an election in the town of Morehead City, to determine whether a majority of the qualified voters of said town approve the levying of a tax by the board of commissioners of said town for the purpose of raising money to aid the said Port Commission in the performance of its duties, do not affect the validity of the bonds which the Port Commission may issue under the power conferred upon the said commission by the act. Such an election is not a condition precedent to the issuance of the bonds. The election may be called and held only in the contingency provided for by the act. If such contingency shall happen, and the election shall be called and held, and a majority of the qualified voters of the town shall approve the levying of the tax, as authorized by the act, the tax will be valid, and may be lawfully levied and collected, without regard to whether the tax is for a necessary purpose within the meaning of section 7 of Article VII of the Constitution of North Carolina. Such tax will be for a public purpose. Briggs v. Raleigh, 195 N.C. 223,141 S.E. 597.
Some of the specific questions in difference between the parties to the controversy and submitted to the court for determination are not necessarily involved in the larger questions presented. There is no error in the judgment to the effect:
(1) That chapter 75, Private Laws of North Carolina, Session 1933, is in all respects a valid and constitutional enactment;
(2) That the Port Commission of Morehead City is a corporation, duly created and duly organized under the provisions of the act;
(3) That the Port Commission of Morehead City, as a corporation created by the General Assembly, for a public purpose, may lawfully *Page 676 
exercise all the powers conferred upon the said commission by the General Assembly in order that said commission may perform its duties as prescribed by the act;
(4) That the bonds which the Port Commission of Morehead City proposes to issue and sell, under the authority conferred upon said commission by the act, will be valid obligations of said commission, and if sold to an agency of the United States Government, will be exempt from taxation, so long as held by such agency, or by any person, firm or corporation holding the same as a purchaser or purchaser from such agency.
(5) That if an election shall be called and held by the board of commissioners of the town of Morehead City, and the levying of a tax as authorized by the act shall be approved by a majority of the qualified voters of said town at said election, such tax will be valid, and may be lawfully levied and collected.
In arriving at the conclusion that the judgment of the Superior Court should be affirmed, we have not been unmindful of contentions made by the counsel for the appellants in their arguments in this Court to the contrary, nor have we been indifferent to well settled principles of constitutional construction. The arguments were forceful and persuasive, but we think not conclusive. The construction of the act has not been, we think, in violation of these principles. It is true that we have not been aided by decided cases or precedents. The questions presented are novel, and in many respects of first impression. We have been influenced largely in our conclusion by the language used by the General Assembly in section 11 of the act. It is there declared that "the Port Commission shall be regarded as performing an essential governmental function in undertaking the construction, maintenance and operation of the said terminal or terminals, and in carrying out the provisions of this act in relation thereto, and shall be required to pay no taxes or assessment upon any of the properties acquired or used by it for such purposes." It is further declared in said section that it is "the policy of the State of North Carolina to promote, encourage and develop water transportation, service and facilities in connection with the commerce of the United States and to foster and preserve in full vigor both rail and water transportation, and that Morehead City, North Carolina, is hereby declared to be a part to be developed in connection with the interior of the State of North Carolina."
Chapter 75, Private Laws of North Carolina, Session 1933, was enacted in furtherance of the declared policy of the State, and in all its provisions is reasonably adequate to that end. The judgment is
Affirmed. *Page 677